432 A.2d 1382

**COMMONWEALTH of Pennsylvania**

v.

**Nancy TATE, Jefferson Vitelli, W. Timothy Laidman, Michael Schlosser, and Barbara Andrews, Appellants.**

Supreme Court of Pennsylvania.

Argued Oct. 21, 1980.

Decided July 14, 1981.

160

Donald W. Miles, Harry A. Dower, Allentown, for appellants.

William H. Platt, Dist. Atty., Michael E. Moyer, Asst. Dist. Atty., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

On March 27, 1976, appellants were arrested on the campus of Muhlenberg College and charged with the summary offense of defiant trespass, 18 Pa.C.S. § 3503(b), when they refused to discontinue the peaceful distribution of leaflets outside a college building in which Clarence Kelley, then Director of the Federal Bureau of Investigation, was speaking at a public symposium on crime prevention. Appellants were convicted at a magistrate's hearing on August 11, 1976, and fined $25.00 each plus court costs. They appealed their convictions to the Court of Common Pleas of Lehigh County. Following a trial de novo without a jury, appellants were found guilty of defiant trespass and ordered to pay fines of $50.00 each plus court costs. On appeal, the Superior Court affirmed without opinion, with Judge Hoffman noting his dissent.[1] We granted allowance of appeal. In light of the affirmative defense provided by the trespass statute, 18 Pa.C.S. § 3503(c)(2), and Article I, sections 7 and 20, of the Pennsylvania Constitution, we conclude that these defiant trespass convictions cannot stand. Hence we reverse.[2]

## I.

Muhlenberg College is a private institution of higher education located in Allentown and chartered by the Com-

1. Judge Spaeth did not participate in the consideration or decision of the case.

2. Because we decide this case under our state Constitution, we need not reach appellants' claim that their convictions are also barred by the First Amendment to the United States Constitution.

monwealth of Pennsylvania. The event at which appellants were arrested was a symposium planned and presented by the Board of Associates of Muhlenberg College, a civic group which regularly uses the college's facilities to present a series of programs for the benefit of the community. The March 27, 1976, symposium was entitled "Citizens' Crusade Against Crime." It was held primarily in the Seegers Student Union Building of the college and featured F.B.I. Director Clarence Kelley, a public figure of national repute, as its principal speaker.

The symposium had been publicized in newspapers and advertised in handbills as being open to the public. In one newspaper account, the president of the Muhlenberg Board of Associates gave the following description of the program: "The symposium has been designed to provide the springboard for an on-going cooperative community effort exploring, evaluating, and implementing practical ways and means for personal and group involvement in crusade against crime. . . . [W]e invite and encourage every concerned citizen to join us on March 27."[3] A registration fee of $4.00 was requested of those attending the symposium, with attendance limited to the first five hundred registrants.

Appellants, who were not Muhlenberg students, were all members of the Lehigh-Pocono Committee of Concern (LEPOCO), a local non-violent anti-war organization. When members of LEPOCO read of Director Kelley's scheduled appearance, they decided to distribute leaflets to members of the public attending his speech. Through the leaflets, LEPOCO wished to protest the denial by Mr. Kelley, in a personally signed letter, of their request under the federal Freedom of Information Act, 5 U.S.C. § 552, for information maintained in F.B.I. files concerning LEPOCO and its members. Further, LEPOCO wished to point out to the public the incongruity of Director Kelley's appearance at a crime prevention symposium in light of then-recent public revelations concerning criminal activities by the F.B.I. which were prominent in the news media. The symposium was the site

3. *Muhlenberg Weekly*, March 25, 1976, at 1, col. 1.

of Director Kelley's first public appearance in the Allentown area.

On Friday, March 26, the day before the symposium, some members of LEPOCO went to the Muhlenberg campus and attempted to distribute leaflets explaining to students why LEPOCO felt it necessary to be present on the following day to communicate its views on Director Kelley and the F.B.I. At that time they were stopped and informed that they would not be permitted to distribute leaflets on the campus grounds since they did not have a permit from the college to do so. The LEPOCO members then attempted to obtain a permit for the following day, but their request was summarily refused.

Appellants and other members of LEPOCO arrived at the Muhlenberg campus on the morning of the symposium and twice attempted to distribute their leaflets to persons entering and leaving the symposium. Both times, at the request of college officials, members of the Allentown Police Department escorted the LEPOCO leafletters to a public sidewalk located approximately forty yards from the entrance to the main symposium building. No arrests were made on either occasion.

Appellants attempted to distribute their leaflets a third time at the close of the symposium that afternoon. They stood about forty feet from the entrance to the student union building and quietly distributed their leaflets. They engaged in no disorderly conduct, carried no signs, used no loud or offensive language, and made no attempt to enter any of the college buildings. They blocked no building entrances and did not attempt to force their leaflets upon unwilling passersby. They received no complaints from any members of the public regarding their presence on campus.

Nonetheless, the Allentown Chief of Police personally instructed appellants that they would be arrested if they did not leave the campus, because they did not have permission from the college to distribute their leaflets and had not paid

the $4.00 registration fee for the symposium. Appellants replied that they wished not to attend the symposium but merely to distribute their leaflets peacefully. Upon appellants' refusal to leave the campus grounds until they had completed their leafletting, the Allentown police arrested the five appellants and removed them to police headquarters, where they were served with citations for the summary offense of defiant trespass and released on their own recognizance.

At the outset, it should be noted that not only appellants but also the District Attorney's Office of Lehigh County were of the opinion that appellants' leafletting was constitutionally protected. At the magistrate's hearing, District Attorney George Joseph, who had been present at the symposium, testified as a defense witness that appellants' conduct had been in no way disorderly.[4] Subsequently, when his office was called upon to prosecute appellants in the trial de novo, he directed Assistant District Attorney Richard Orloski to file a motion to nolle pros the charges against appellants. In support of the motion, the Assistant District Attorney argued that "[p]eaceful, non-violent leafletting at a university function where the public is invited and where public personalities are featured is constitutionally protected . . . ."[5]

Despite the Commonwealth's reluctance to prosecute, the court denied the motion, and the case proceeded to trial on February 28, 1977. At the trial de novo, as at the original summary proceeding, appellants defended on the ground that their leafletting at the symposium was conduct both statutorily and constitutionally protected from prosecution.

4. Record at 149a; Notes of Testimony of Magistrate's Hearing, August 6, 1976, at 44–46.

5. Application for Pre-Hearing Relief (Motion to Dismiss) at ¶ 23; Record at 10a–15a, 149a–151a. It is to be noted that Mr. Orloski, who is no longer with the District Attorney's Office, has filed an amicus brief with this Court on behalf of appellants, expressing his continuing belief that this prosecution is inappropriate.

The trial court rejected this contention and subsequently entered a verdict of guilty.

## II.

■ The defiant trespass statute, 18 Pa.C.S. § 3503(b), provides:

"(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

(i) actual communication to the actor; . . ."

* * * * * *

The statute further provides, however, that:

"It is a defense to prosecution under this section that: the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining on the premises."

18 Pa.C.S. § 3503(c)(2). Appellants' position throughout these proceedings has been that the outdoor campus grounds of the college were "open to the public" on the day of the symposium and that appellants complied with all "lawful conditions" to their presence outside the main symposium building.[6] The trial court found the statutory defense to be inapplicable, observing that "colleges do not invite the general public on their premises and indeed in our view have the

---

**6.** In its brief on this appeal, the Commonwealth raises for the first time the contention that appellants are barred from asserting their constitutional and statutory defenses on appeal by their failure to raise these issues in post-verdict motions. See Pa.R.Crim.P. 1123. However, all the issues raised here by appellants were briefed and argued to the trial court after the completion of testimony on February 28, 1977, and prior to the court's entry of a verdict of guilty on August 8, 1977. On August 15, 1977, within the ten-day period mandated by Pa.R.Crim.P. 1123(a), counsel for appellants wrote to the trial court to determine whether post-verdict motions were necessary. The court replied by letter that "little purpose would now be served by the filing of [post-verdict] motions, which have, in effect, already been briefed, argued and decided." Record at 200a. Thus, on a record where the court has already "decided" the issue, the Commonwealth's contention is clearly without merit. See Commonwealth v. Myers, 485 Pa. 519, 524, 403 A.2d 85, 87 (1979) ("The law does not require the performance of futile acts."). See also Pa.R. Crim.P. 1123(c).

right to exclude anyone they wish whether it be arbitrary or not." [7]

█ If a private home were involved, this conclusion would be justified. However, the trial court's conclusion rests on a faulty premise. On the day in question the campus was indeed "open to members of the public" within the meaning of § 3503(c)(2). Although privately supported, Muhlenberg College serves in many respect as a community center for Allentown, maintaining upon its campus a United States Post Office station, a public cafeteria, an information and sales booth for tickets to public events, and a federal book depository library, which is required "to be maintained so as to be accessible to the public." 44 U.S.C. § 1910. All of these facilities are located within a few hundred yards of the site of appellants' arrest. It was established at trial that other members of the public who, like appellants, did not choose to attend the symposium, were present without incident on the Muhlenberg campus on March 26, 1976. Moreover, according to the testimony of the college president, Muhlenberg had "no policy about off-campus visitors," and "a lot of people walk[ed] the campus." [8]

The college did have a requirement that any person from off campus wishing to distribute materials or offer materials for sale secure the permission of the college beforehand. The only difference between appellants and the other members of the public on the college grounds on the day of the symposium was that appellants attempted to distribute leaflets relating to the symposium without having received permission to do so from the college. As stated earlier, appellants had sought a permit on the previous day but had

7. 67 Lehigh L.J. 337, 339 (1977). The court thus rejected as irrelevant testimony proffered by appellants that one year prior to the symposium, Muhlenberg College had allowed a group of Ukranian Catholics and members of the John Birch Society to conduct, without having previously secured permission, a loud demonstration on campus against certain visiting Russian Orthodox clergymen. Although this evidence is unnecessary to our decision, we note that evidence of lack of uniformity in the enforcement of conditions of access is, in the circumstances of this case, clearly relevant.

8. Record at 91a.

been refused. The record does not reveal what standards, if any, were applicable to the granting or denial of such permission. It appears, however, from the testimony of the college president, that the college believed itself entitled to exercise its discretion arbitrarily.[9]

◼ Thus at issue is whether the college's standardless permit requirement constitutes a lawful condition with which appellants were obligated to comply or otherwise face prosecution and conviction as defiant trespassers.[10] Here we are faced with an educational institution which holds itself out to the public as a community resource and cultural center, allows members of the public to walk its campus, permits a community organization to use its facilities as a forum for a public official of national importance, and at the same time arbitrarily denies a few members of the public the right to distribute leaflets peacefully to the relevant audience present at that forum. In these circumstances, we are of the view that the Constitution of this Commonwealth protects appellants' invaluable right to freedom of expression against the enforcement, by state criminal statute, of the college's standardless permit requirement.

### III.

In 1776, more than a decade before the adoption of the Federal Constitution, this Commonwealth set forth in Arti-. cle XII of the Declaration of Rights of its first Constitution the principle "[t]hat the people have a right to freedom of speech, and of writing, and publishing their sentiments . . . ." The Pennsylvania Constitution of 1790 further artic-

9. Record at 105a–106a.

10. The contention that appellants also violated a "lawful condition" for access to the campus by failing to pay the $4.00 symposium "registration fee" is barely deserving of discussion. Like other members of the public who were present on campus but not asked to leave or arrested, appellants made no attempt to enter the symposium building, the only place on campus where an entrance fee was in fact required. Moreover, it was stipulated at trial that another member of LEPOCO paid the fee and took part in the symposium, but was nonetheless prevented by the college from distributing leaflets. Record at 42a.

ulated this affirmative guarantee in language which is preserved in Article I, section 7, of our present Constitution:

"The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty. . . ."

So, too, the framers of our first Constitution recognized the complementary rights of assembly and petition, which are safeguarded today through Article I, section 20 of our present Constitution:

"The citizens have a right in a peaceable manner to assemble together for their common good, and to apply to those invested with the power of government for redress of grievances or other proper purposes, by petition, address or remonstrance."

■ It is well settled that a state may provide through its constitution a basis for the rights and liberties of its citizens independent from that provided by the Federal Constitution, and that the rights so guaranteed may be more expansive than their federal counterparts. *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 80–82, 100 S.Ct. 2035, 2040–41, 64 L.Ed.2d 741 (1980); see *Oregon v. Hass*, 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975); *Cooper v. California*, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967). See also *Commonwealth v. Ware*, 446 Pa. 52, 284 A.2d 700 (1971), cert. granted sub nom. *Pennsylvania v. Ware*, 405 U.S. 987, 92 S.Ct. 1254, 31 L.Ed.2d 453, subsequently vacated and denied, 406 U.S. 910, 92 S.Ct. 1606, 31 L.Ed.2d 821 (1972) ("it appearing that the judgment below rests upon an adequate state ground"). See generally Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv.L.Rev. 489, 503 (1977). This Court has on numerous occasions recognized the Pennsylvania Constitution to be an alternative and independent source of individual rights. See, e. g., *Willing v. Mazzocone*, 482 Pa. 377, 393 A.2d 1155 (1978); *Commonwealth v. Triplett*, 462 Pa. 244, 341 A.2d 62 (1975); *Commonwealth v. Knowles*, 459 Pa. 70, 73 n.3, 327 A.2d 19, 20 n.3 (1974); *Commonwealth v. Platou*, 455 Pa. 258, 312 A.2d 29

(1973), cert. denied, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); *Goldman Theatres, Inc. v. Dana*, 405 Pa. 83, 173 A.2d 59, cert. denied, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961).

In *Goldman Theatres v. Dana*, supra, this Court held a state requirement that motion pictures be submitted to a Board of Censors before exhibition to be prohibited by Article I, section 7, of the Pennsylvania Constitution, notwithstanding the possibility that such a requirement might not violate the First Amendment to the United States Constitution. 405 Pa. at 95–6, 173 A.2d at 65. In so doing, we observed that Article I, section 7, was "designed to prohibit the imposition of prior restraints upon the communication of thoughts and opinions." Id., 405 Pa. at 88, 173 A.2d at 62.

Manifestly, the purpose underlying such a prohibition is to effectuate the constitutional guarantee of freedom of expression. The observation of the Supreme Court of the United States with regard to the First Amendment to the United States Constitution applies equally to the Pennsylvania Constitution:

" '[A] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute * * * is * * * protected against censorship or punishment . . . . There is no room under our Constitution for a more restrictive view. For the alternative would lead to standardization of ideas either by legislatures, courts, or dominant political or community groups.' "

*Cox v. Louisiana*, 379 U.S. 536, 551–52, 85 S.Ct. 453, 462–63, 13 L.Ed.2d 471 (1965), quoting *Terminiello v. Chicago*, 337 U.S. 1, 4–5, 69 S.Ct. 894–96, 93 L.Ed. 1131 (1949). See *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1

L.Ed.2d 1498 (1957) ("protection given speech and press was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people").

The "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," *New York Times v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964), has special meaning for this Commonwealth, whose founder, William Penn, was prosecuted in England for the "crime" of preaching to an unlawful assembly and persecuted by the court for daring to proclaim his right to a trial by an uncoerced jury.[11] It is small wonder, then, that the rights of freedom of speech, assembly, and petition have been guaranteed since the first Pennsylvania Constitution, not simply as restrictions on the powers of government, as found in the Federal Constitution, but as inherent and "invaluable" rights of man.

■ Of course, on this record, these invaluable rights are not the sole constitutional guarantees which we must consider. Because Muhlenberg College is privately owned, appellants' conduct implicates another longstanding right under the Pennsylvania Constitution, that of "acquiring, possessing and protecting property." Pa.Const. Art. I, § 1.[12] This Court has recognized that the right to possess and use property, along with the rights of freedom of speech, religion, and the press, is one of "the Hallmarks of Western Civilization." *Andress v. Zoning Board of Adjustment of Philadelphia*, 410 Pa. 77, 86, 188 A.2d 709, 713–14 (1963). We have also recognized, however, that this right is not absolute. Rather, it is

> "subject to the paramount right of the Government to reasonably regulate and restrict, under a reasonable and

11. Penn's own account of this famous trial is contained in *The Peoples Ancient and Just Liberties Asserted in the Tryal of William Penn* (1670); See also Brant, *The Bill of Rights: Its Origin and Meaning* (1965), at 53–67.

12. This right is also protected by the Fifth and Fourteenth Amendments to the United States Constitution.

non-discriminatory exercise of the police power, the use of
property whenever necessary for the public health, safety,
morals and general welfare: *Euclid v. Ambler Realty Co.*,
272 U.S. 365 [, 47 S.Ct. 114 (1926)]; *Medinger Appeal*, 377
Pa. 217, 221, 104 A.2d 118 [, 120 (1965)]."

Id., 410 Pa. at 83–84, 188 A.2d at 712. See *National Wood
Preservers v. Dep't of Environmental Resources*, 489 Pa. 221,
414 A.2d 37 (1980); *National Land & Investment Co. v.
Easttown Township Board of Adjustment*, 419 Pa. 504, 215
A.2d 597 (1965).

■ The defiant trespass statute under which appellants
were convicted is clearly designed to protect the right of
property, but it by no means permits every private landown-
er in every instance to invoke the power of the state to
protect that right. Rather, by providing an affirmative
defense to prosecution when property is "open to members
of the public" and an alleged trespasser has complied with
all "lawful conditions" for access, the statute reflects a
proper and necessary accommodation by the Legislature of
the right to freedom of expression. 18 Pa.C.S. § 3503(c)(2).
This accommodation is premised on the established principle
that government may, when necessary, protect personal
liberties even when that protection, to a limited extent,
subordinates the constitutional interests of others. See *Zac-
chini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 97
S.Ct. 2849, 53 L.Ed.2d 965 (1977); *Runyon v. McCrary*, 427
U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Walz v. Tax
Commission*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697
(1970).

In support of a similar constitutional accommodation, the
Supreme Court of the United States recently observed:
"It is, of course, well-established that a state in the
exercise of its police powers may adopt reasonable restric-
tions on private property so long as the restrictions do not
amount to a taking without just compensation . . . ."
*PruneYard Shopping Center v. Robins*, supra, 447 U.S. at 81,
100 S.Ct. at 2040–41. In *PruneYard*, the Court affirmed a
decision of the California Supreme Court that, under the

California Constitution, such restrictions could be properly imposed upon a large shopping center to protect the rights of free speech and petition, where the activity sought to be exercised did not "unreasonably impair the value or use of [the] property as a shopping center." Id. at 83, 100 S.Ct. at 2042.

In reaching its decision, the California Supreme Court stated:

"To protect free speech and petitioning is a goal that surely matches the protecting of health and safety, the environment, aesthetics, property values, and other societal goals that have been held to justify reasonable restrictions on private property rights."

*Robins v. PruneYard Shopping Center*, 23 Cal.3d 899, 908, 592 P.2d 341, 346, 153 Cal.Rptr. 854, 859 (1979). Quite recently, the Supreme Court of New Jersey reached a similar conclusion in *State v. Schmid*, 84 N.J. 535, 423 A.2d 615 (1980), holding that the New Jersey Constitution's guarantees of freedom of speech and assembly apply to the distribution of political material on the campus of Princeton University. Mindful of both this Commonwealth's great heritage of freedom and the compelling language of the Pennsylvania Constitution, we likewise hold that, in certain circumstances, the state may reasonably restrict the right to possess and use property in the interests of freedom of speech, assembly, and petition.

## IV.

To determine whether the appropriate circumstances exist here, we must balance the college's right to possess and protect its property against appellants' rights of expression in light of the compatibility of that expression with the "activity of [the] particular place at [the] particular time." *Grayned v. City of Rockford*, 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972); *Brush v. Pennsylvania State University*, 489 Pa. 243, 251–252, 252 n.8, 414 A.2d 48, 52–53, 53 n.8 (1980). On this record, it is clear that the balance must be struck in appellants' favor.

Muhlenberg College not only permitted the public to walk its campus freely and use many of its facilities; it also permitted the Muhlenberg Board of Associates to hold public events on campus for the benefit of the community, thereby enhancing the college's reputation. But the "Citizens' Crusade Against Crime" in March of 1976 did more than benefit the community and the college. It also provided a public forum for the Director of the F.B.I., then a controversial public figure. Whatever the merits of their views, appellants wished to communicate peacefully and unobtrusively— in an area normally open to the public—to those assembled their belief that LEPOCO in particular and the public in general had been wronged by F.B.I. Director Kelley and his organization.[13] Thus, the absolutely fundamental rights of the public to freedom of political speech and petition for redress of grievances were clearly implicated.

At the same time, Muhlenberg College, as a private institution, was by no means powerless to control the access of members of the public to the area in front of its student union building on the day of the symposium. As the Supreme Court of New Jersey observed in *State v. Schmid*, supra:

"Even when an owner of private property is constitutionally obligated to honor speech and assembly rights of others, private property rights themselves must nonetheless be protected. The owner of such private property, therefore, is entitled to fashion reasonable rules to control the mode, opportunity and site for the individual exercise of expressional rights upon his property.[14] It is at this

13. In light of their subsequent arrest, it is ironic that the very wrongs which appellants were protesting were the F.B.I.'s alleged attempts to chill political expression.

14. Of course, such rules may not be based upon the content of the expression sought to be exercised. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); *Lehman v. City of Shaker Heights*, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974); *Brush v. Pennsylvania State University*, supra. Nor may they be based simply upon an "undifferentiated fear or apprehension of disturbance . . . ." *Jones v. Board of Regents of Univ. of Arizona*, 436 F.2d 618, 620 (9th Cir. 1970).

level of analysis—assessing the reasonableness of such restrictions—that weight may be given to whether there exist convenient and feasible alternative means to individuals to engage in substantially the same expressional activity."

84 N.J. at 563, 423 A.2d at 630. Article I, section 1, of the Pennsylvania Constitution and the Fifth and Fourteenth Amendments to the United States Constitution require no less. *PruneYard Shopping Center v. Robins*, supra, 447 U.S. at 83, 100 S.Ct. at 2042. Here, however, there existed only a vague requirement of "permission," governed by no articulated standards.[15]

■ Through public advertisements, the Board of Associates assembled a public audience on the Muhlenberg College campus to hear F.B.I. Director Kelley present his views. In these circumstances, the college could not, consistent with the invaluable rights to freedom of speech, assembly, and petition constitutionally guaranteed by this Commonwealth to its citizens, exercise its right of property to invoke a standardless permit requirement and the state's defiant trespass law to prevent appellants from peacefully presenting their point of view to this indisputably relevant audience in an area of the college normally open to the public. Because appellants complied with all "lawful conditions" for access to the premises, 18 Pa.C.S. § 3503(c)(2), their convictions may not stand.

15. Thus, the Commonwealth's argument that the public sidewalks surrounding the college provided a reasonable alternative to appellants for the free communication of their ideas to those attending the symposium misperceives the issue. If appellants had violated time, place and manner restrictions imposed by the college, the adequacy of the sidewalks as an alternative forum—which, it should be noted, was not established at trial—would indeed be relevant. In the absence of such restrictions, the college's refusal to permit the peaceful distribution of leaflets on a campus walkway cannot be sustained by the argument that appellants could have reached the same audience elsewhere. See, e. g., *Brush v. Pennsylvania State University*, supra (prohibition of canvassing in hallways of university residence hall living areas permissible under United States and Pennsylvania Constitutions as time, place and manner restriction in light of existence of ample alternative channels for communication with residents).

Accordingly, the judgments of sentence are reversed and appellants discharged.

LARSEN, J., filed a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent. In *Food Employees Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), the United States Supreme Court recognized a constitutional right, under the First Amendment of the United States Constitution, to engage in expressive activity on private property under circumstances analogous to those presented in this case. Four years later, in *Lloyd Corp. v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972), that Court found it necessary to substantially repudiate the rationale of *Logan Valley*. Two years after *Lloyd*, in *Hudgens v. N. L. R. B.*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976), the United States Supreme Court expressly overruled *Logan Valley*, observing that the rationale "did not survive the Court's decision in the *Lloyd* case", and that the United States Constitution would not provide protection "against a private corporation or person who seeks to abridge the free expression of others." *Id.* at 518 and 513, 96 S.Ct. at 1035 and 1033. In my opinion, this Court now errs in not following the approach taken by the United States Supreme Court in interpreting the United States Constitution, and in embarking on the same line of reasoning with respect to the Pennsylvania Constitution which the United States Supreme Court adopted in similar circumstances, and then rejected only four years later.

Every citizen of this country and Commonwealth has a right to hold whatever political, religious, social and philosophical beliefs and viewpoints that he or she chooses, and should also be free to entertain similar-minded persons on their own private property and domain without interference from others. Muhlenberg College is a private corporation and, as such and like all other private citizens of this Commonwealth, should have the right to invite whom it wishes onto its own property and to exclude any other

private persons from entering on that property. To carve out exceptions to this right and to engage in the majority's "balancing" of constitutional interests vis-a-vis private citizens creates for property owners confusion and uncertainty in the law, and chills the exercise of property rights. The Lehigh-Pocono Committee of Concern (LEPCO) has the same rights as Muhlenberg College with respect to the use of their own property and also with respect to the use of public property, and those are the appropriate forums for the expression of LEPCO's opinions, not on property belonging to another.

Accordingly, I would affirm the judgments of sentence.