# Zartman v. Pennsylvania Animal Rights Coalition

*Dennis O'Connell*, for plaintiff.
*Richard H. Elliott*, for defendant Lynne P. Balzer.

VOGEL, *J.*, November 28, 1983—This is an equity action, filed by plaintiff, Marlin U. Zartman on June 23, 1982 against defendants, Pennsylvania Animal Rights Coalition, Lynne P. Balzer, t/a L.O.V.E. and The American Anti-Vivisection Society. The American Anti-Vivisection Society was removed from the case by agreement of the parties and stipulation of counsel on September 30, 1983. Plaintiff seeks to enjoin defendants from entering on his property to distribute leaflets and to picket.

After a preliminary injunction was entered by this court per the Honorable William H. Yohn, Jr., on June 10, 1983 and a permanent injunction issued per the Honorable Samuel W. Salus, II, on June 22, 1983 with regard to the picketing aspect of this case, a hearing was held before the undersigned on September 30, 1983 with regard to the First Amendment considerations as to the distribution of leaflets. Thus, the case is now in the appropriate posture for the following.

## FINDINGS OF FACT

(1) Plaintiff is Marlin U. Zartman, a lessee at Zern's Farmers Market in Gilbertsville, Montgomery County, Pennsylvania, who operates various auction stands at Zern's Market.

(2) Defendants are the Pennsylvania Animal Rights Coalition and Lynne P. Balzer, t/a L.O.V.E. (League Opposing Vivisection Experiments.)

(3) Zern's Farmers Market is a farmer's market in Gilbertsville, Pennsylvania, consisting of a 100,000 square foot building of which space is leased to approximately 350 merchants.

(4) The merchants' stands vary in an innumerable variety of products which one has to see to believe, including meat, vegetables, cutlery, clothes, flea markets, leather goods, etc.[1]

(5) One of the activities at Zern's is the live animal auction held in a large auction hall with stands situated for the public and animal pens in the rear. Small animals including cats and dogs are auctioned.

---

1. The court, with the permission of counsel, personally visited Zern's Market on September 30, 1983.

Unfortunately, there are no pictures which would show the auction and parking areas in question.

(6) The aisles at Zern's Market are very narrow and there is no general "mall" or "court" area. (N.T. 9)

(7) Zern's Market's management has a 15-year long policy to the effect that no one (including the merchants at Zern's Market) may distribute leaflets at Zern's Market.

(8) Zern's Market provides a stand, free of charge, to any non-profit group who wishes to sell baked goods or crafts in the nature of a fundraiser.

(9) The defendant, Lynne P. Balzer, is the President of L.O.V.E. (i.e.) League Opposing Vivisection Experiments, who, along with the American Anti-Vivisection Society, opposes the use of dogs and cats for scientific experiments.

(10) On June 12, 1982, the defendant, Lynne P. Balzer, went to the Zartman animal auction at Zern's Market and began distributing leaflets in the auction hall itself. The animal auction is located at the end of a row of stands and is adjacent to a furniture auction area.

(11) Shortly after she began distributing the leaflets, Mrs. Balzer was asked to cease the leafletting by the Secretary of the Zartman Auction, Mrs. Darlene Halterman.

(12) Another incident occurred at Zern's Market on June 11, 1983 when Mrs. Balzer led a group of anti-vivisectionists to Zern's where they peacefully demonstrated, carrying signs on the sidewalks along Route 73.

(13) The court observed on September 30, 1983, that on the west side of Zern's Market, there is a parking and driveway area, such that distribution of leaflets immediately next to the live animal auction area would create a safety hazard.

(14) The demonstration referred to in Finding of Fact No. 12, supra, was pursuant to and in compli-

ance with a preliminary injunction entered of record by this court, per the Honorable William H. Yohn, Jr., on June 10, 1983.

(15) On June 22, 1983, this court, per the Honorable Samuel W. Salus, II, issued a permanent injunction "in the spirit of Judge Yohn's temporary injunction" restricting the defendants' picketing "to the sidewalk adjacent to the business."

(16) Judge Salus' injunction of June 22, 1983 referred to in Finding of Fact No. 13, supra, continued the matter in order for the undersigned to determine whether the distribution of leaflets inside Zern's Market was protected by the First Amendment rights of free speech.

## OPINION

This case presents a very interesting point of law involving the First Amendment expressional rights of a group of anti-vivisectionists, namely, the defendants, Lynne P. Balzer, t/a L.O.V.E. and the Pennsylvania Animal Rights Coalition, vis-a-vis the private property rights of the owners of Zern's Farmers Market. Plaintiff, Marlin U. Zartman, is seeking a permanent injunction prohibiting the defendants from entering on the business premises of the plaintiff to hand out leaflets or carry picket signs.

Plaintiff filed this injunction on June 23, 1982. Preliminary and permanent injunctions were issued by Judge Yohn and Judge Salus respectively on June 13, 1983 and June 22, 1983 as to the picketing aspect of this case. This court held a hearing on September 30, 1983 to resolve the outstanding First Amendment issues involved.

With regard to the distribution of leaflets, and the First Amendment considerations, this Court is guided by the U.S. Supreme Court's decision in the area of First Amendment rights in a shopping center

complex, namely, Lloyd Corporation v. Tanner, 407 U.S. 551 (1972). In Lloyd, supra, the U.S. Supreme Court held that a shopping center can preclude war and draft protesters from distributing handbills inside the shopping center or mall. The court noted that since the anti-war message of the protesters was unrelated to the shopping center's operation, there was no First Amendment protection with regard to the handbilling activity. The Supreme Court also drew a distinction between a private facility open to the public, as in this case at bar, and a private facility that assumes all of the functions of a public unit, as the company-owned town in Marsh v. Alabama, 326 U.S. 501 (1946).

Similar to the present Zern's Market case, the Supreme Court noted in Lloyd, supra, the although a shopping center is open to the public, "[t]he invitation is to come to the Center to do business with the tenants. . . . There is no open-ended invitation to the public to use the Center for any and all purposes, however incompatible with the interests of both the stores and the shoppers whom they serve." Lloyd, supra, at 564-565.

In the case at bar, it has been argued by the defendants that the protesters' message is directly related to the acitivity of Zern's Market, namely the animal auction. However, we determine that the defendants' message was not directly related to the activity at Zern's Market. Lynne P. Balzer, the League Opposing Vivisection Experiments and the Pennsylvania Animal Rights Coalition apparently are not opposed to animal auctions, per se, but rather, are opposed to vivisection, i.e., using animals such as dogs or cats for scientific experiments in laboratories. Defendant, Mrs. Balzer, distributed the leaflets and led the picketing demonstrators in order to convince the public to not sell their animals at the

Zartman auction because they might be bought by laboratories and used for scientific vivisection experiments.[2]

The ideology of anti-vivisection is not limited to the operation of the animal auction at Zern's Market. It is apparently a broad philosophy which may be advocated in any public place. In the words of the U.S. Supreme Court in Lloyd, supra, at 564, the defendants "could have distributed these handbills on any public street, on any public sidewalk, in any public park, or in any public building. . . ." This does not deny, however, that the defendants have a particular interest in distributing their leaflets and picketing near Zern's Market, since that is where the animals are sold for possible vivisection experiments.

Defendants also argue that under the United States Supreme Court case of PruneYard Shopping Center v. Robbins, 447 U.S. 74 (1980), state constitutional provisions may be construed to grant more free speech rights to individuals than accorded by the Federal Constitution and the cases thereunder. Thus, as the argument goes, the defendants have more free speech rights under the Pennsylvania Constitution than under the Federal Constitution and Lloyd, supra. We basically agree with the defendant's reading of the PruneYard case, supra, however, in the absence of a Pennsylvania appellate court decision construing the Pennsylvania Constitution to confer increased free speech rights in the shopping center context, this court is bound to follow the United States Supreme Court's decision in Lloyd, supra.

---

2. There was evidence presented at the hearing on September 30, 1983 that approximately two dogs and two cats are sold at a usual auction at plaintiff's stand.

Defendants cite Com. v. Tate, 495 Pa. 158 432 A.2d 1382 (1981), regarding handbilling on a college campus, arguing that this case increases the free speech rights of the citizens of Pennsylvania beyond that granted by the Federal Constitution. However, a careful reading of the Tate case, supra, indicates that the Pennsylvania Supreme Court not only stated that the Pennsylvania Constitution can confer increased free speech rights, but also recognized that the Pennsylvania Constitution also strongly protects the rights of private property owners.[3]

Thus, under Tate, supra, the court must employ a balancing test to weigh the free speech rights of individuals against the rights of private property owners to use and possess their property as they wish. As the Pennsylvania Supreme Court stated at pages 169-174 of Tate, supra:

• • •

"It is well settled that a state may provide through its constitution a basis for the rights and liberties of its citizens independent from that provided by the Federal Constitution, and that the rights so guaranteed may be more expansive than their federal counterparts. PruneYard Shopping Center v. Robbins, 447 U.S. 74, 80-82, 100 S. Ct. 2035, 2040-41, 64 L. Ed. 2d 741 (1980).

• • •

"Of course, on this record, these invaluable rights are not the sole constitutional guarantees which we

---

3. The cases of Brush v. Pennsylvania State University, 489 Pa. 243 (1980) and Rouse Philadelphia, Inc. v. Ad Hoc '78, 274 Pa. Super. 54, 417 A.2d 1248 (1979) are so dissimilar from the facts of this case, that they are inapposite to the present determination.

must consider. Because Muhlenberg College is privately owned, appellants' conduct implicates another longstanding right under the Pennsylvania Constitution, that of 'acquiring, possessing and protecting property.' Pa. Const. Art I, §1. This Court has recognized that the right to possess and use property, along with the rights of freedom of speech, religion, and the press, is one of 'the Hallmarks of Western Civilization.'

• • •

". . . government may, when necessary, protect personal liberties even when that protection, to a limited extent, subordinates the constitutional interests of others.

• • •

"Mindful of both this Commonwealth's great heritage of freedom and the compelling language of the Pennsylvania Constitution, we likewise hold that, in certain circumstances, the state may reasonably restrict the right to possess and use property in the interests of freedom of speech, assembly, and petition.

To determine whether the appropriate circumstances exist here, we must balance the college's right to possess and protect its property against appellants' rights of expression in light of the compatibility of that expression with the 'activity of [the] particular place at [the] particular time.' "

Of course, plaintiff, Mr. Zartman and the owners of Zern's Market can rightfully control, by reasonable rules, the time, place and manner of the individual exercise of free speech rights on their private property, Tate, supra, at 74.

Accordingly, in applying the Tate, supra, balancing test to the facts of the case at bar, the court de-

termines that it is unreasonable for the defendants to be allowed to distribute leaflets in the Zartman auction area itself or in the crowded and very narrow aisles of Zern's Market. This activity would simply cause too much disruption to the business of plaintiff's auction in particular and of Zern's Market in general, such that the private property rights of the plaintiff and owners of Zern's Market far outweigh the free speech rights of the defendants.[4] At the same time, to restrict the defendants to leafletting on the sidewalk out on Route 73 along the perimeter of Zern's Market would likewise be unreasonable. Thus the court must strike a balance under the Tate case, supra, in order to protect the important rights of both parties.

The court is aware that although the law under Lloyd, supra, does not permit the defendants to distribute leaflets in the plaintiff's auction area or in the aisles of Zern's Market, the sidewalk out on Route 73 is simply too far away for leafletting to have any significant effect. Therefore, the court determines that although picketing may be proper on the sidewalk along Route 73 in the spirit of Judge Yohn's preliminary injunction and Judge Salus' permanent injunction, the distribution of leaflets must be allowed closer to the Zern's Market premises, namely, on the road next to Zern's Market, on its western side, off of Route 73, leading to the Zern's Market parking lot, on that portion of the road in front of the animal auction area.

## CONCLUSIONS OF LAW

(1) Plaintiff, Marlin U. Zartman, is entitled to a permanent injunction against the defendants,

---

4. This is not to mention the littering problem that would result from such leafletting activity.

Lynne P. Balzer, t/a L.O.V.E. and the Pennsylvania Animal Rights Coalition, prohibiting the defendants from distributing leaflets at the Zartman auction stand or in the aisles of Zern's Market, Gilbertsville, Pa.

(2) The permanent injunction referred to in paragraph No. 1, supra, does not violate the defendants' First Amendment rights to free speech under Lloyd Corporation v. Tanner, 407 U.S. 551 (1972).

(3) The First Amendment requires, however, that the defendants be allowed to distribute leaflets at the sidewalk or berm area of the road or driveway leading into the Zern's Market parking lot on that portion of the road or driveway in front of the animal auction area, which road is on the west side of Zern's, and not limited to the sidewalk bordering on the Zern's Market premises on Route 73 in Gilbertsville, Pa.

(4) Defendants may not block ingress or egress on the road or driveway referred to in Conclusion of Law No. 3, supra.

## DECREE NISI

And now, this November 28, 1983, after a hearing on September 30, 1983, the following is determined:

Plaintiff, Marlin U. Zartman, is granted a permanent injunction against the defendants, Lynne P. Balzer, t/a L.O.V.E., and the Pennsylvania Animal Rights Coalition, pursuant to plaintiff's complaint of June 23, 1982 as follows:

(1) Defendants are enjoined from distributing leaflets at the Zartman auction stand or in the aisles of Zern's Farmers Market, Gilbertsville, Pa.

(2) Defendants are permitted to distribute leaflets at the sidewalk or berm area of the road or drive-

way of the west side of Zern's Market off of Route 73 leading into the Zern's Market parking lot on that portion of the sidewalk or berm area of the said road located in front of the animal auction area.

(3) No more than five people at any one time may distribute leaflets at this location referred to in paragraph No. 2, supra.

(4) Defendants may not block ingress or egress in any way on the road or driveway referred to in paragraph No. 2, supra.

This decree nisi shall become the final decree of this court if no exceptions are filed within ten days.*

---

*Neither party filed exceptions to the decree nisi.