790 A.2d 277

**Honorable Leonard J. BODACK and Honorable Christine M. Tartaglione, Respondents**

v.

**LAW ENFORCEMENT ALLIANCE OF AMERICA, INC., Petitioner.**

**No. 120WM 2001.**

Supreme Court of Pennsylvania.

Nov. 5, 2001.

## *ORDER*

PER CURIAM.

**AND NOW,** this 5th day of November, 2001, the Application for Extraordinary Relief is denied.

Justice CASTILLE files a dissenting statement.

Justice SAYLOR files a dissenting statement in which Justice NEWMAN joins.

CASTILLE, Justice, dissenting.

I respectfully dissent from the Court's *per curiam* decision refusing even to review the instant matter. This case involves an unprecedented prior restraint upon petitioner's free speech rights under both the Federal and Pennsylvania Constitutions. On the very day respondents filed their complaint, October 23, 2001, the lower court here granted a special injunction in the nature of a temporary restraining order and then, after a hearing, a preliminary injunction incorporating the restrictions in the temporary restraining order. These sweeping orders prohibited petitioner from, *inter alia,* "broadcasting, sponsoring or otherwise communicating any advertisements, television commercials, mailings or other electioneering materials of any description for the purpose of the election of any candidate or for influencing the outcome of the November 6, 2001 judicial

elections in the Commonwealth of Pennsylvania." Pursuant to these prior restraints by the lower court, petitioner has been judicially silenced for the two-week period immediately preceding the election at issue. The decision below is supported by citation to no judicial authority.

The issue involves the proper construction of *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), and its progeny as a matter of both state and federal constitutional law. More specifically, to employ the distinction most commonly used in subsequent cases and commentaries in this area, the issue is whether the speech in this case amounted to "issue advocacy"—which is constitutionally protected—or "express advocacy" promoting the election or defeat of a clearly identified candidate—which is a proper subject of regulation, at least under the First Amendment. The question of the proper application of *Buckley* and its progeny in light of various requirements of the Pennsylvania Election Code, 25 P.S. § 2601 *et seq.,* which the lower court invoked to silence petitioner, is one that this Court has **never** addressed. Moreover, it is a matter of obvious public importance, which is capable of recurring. In addition, it is an issue that is only **likely** to arise in the crucible of a contested election, as this issue has arisen, so this is a particularly propitious time for this Court to visit the issue, not only to resolve this particular, serious matter but also to provide guidance in all future, like cases. Accordingly, I would grant the petition for extraordinary relief and assume jurisdiction under 42 Pa.C.S. § 726. *See Commonwealth v. Morris,* 565 Pa. 1, 771 A.2d 721, 731 (2001) (setting forth considerations governing exercise of extraordinary jurisdiction).

Respondents dispute whether there is an exigency, arguing that if petitioner "is not seeking to influence the outcome of the election, then it should not matter to [petitioner] if its arguments on appeal are heard and resolved after the election." The Court apparently agrees with this argument as a reason to deny review. But respondents misconceive the scope of the right at issue. *Buckley* and its progeny do not distinguish between speech aimed at influencing the outcome

of an election and speech that is not so targeted. Rather, the distinction involves speech involving express words of advocacy for a particular candidate and speech not so directed—irrespective of the intent behind it. As the *Buckley* Court noted, "So long as persons and groups eschew expenditures that in express terms advocate the election or defeat of a clearly identified candidate, **they are free to spend as much as they want to promote the candidate and his views.**" 424 U.S. at 45, 96 S.Ct. 612 (emphasis supplied). The Court also noted that: "Advocacy of the election or defeat of candidates for federal office [*Buckley* involved regulation of federal elections] is no less entitled to protection under the First Amendment than the discussion of political policy generally or advocacy of the passage or defeat of legislation." *Id.* at 48, 96 S.Ct. 612. Thus, the fact that petitioner has been silenced at a time when free speech rights should be most jealously protected most certainly is a concern weighing heavily in favor of extraordinary review here.

The fact that the Court has apparently accepted one interpretation of the *Buckley* decision over others in even deciding the preliminary question of whether to grant review is another reason requiring review here. It is true that there are commentators who advocate that any "election-oriented" speech should be deemed subject to governmental regulation under *Buckley.* But that view is not commanded by the case itself. Nor is it the only, or even the majority, view among courts and commentators. *Compare* Richard L. Hasen, *The Surprisingly Complex Case for Disclosure of Contributions and Expenditures Funding Sham Issue Advocacy,* 48 UCLA L.Rev. 265 (December, 2000) *with* Lillian R. BeVier, *Mandatory Disclosure, "Sham Issue Advocacy," and Buckley v. Valeo: A Response to Professor Hasen,* 48 UCLA L.Rev. 285 (December, 2000). More importantly for our purposes, the notion that "election-oriented" speech is not encompassed by the right to freedom of speech, and thus is subject to prior restraint, would represent a radical departure from our own jurisprudence. In short, the Court today has avoided this important issue by begging the very question presented.

Even aside from these concerns, it is particularly important that this Court address the matter because petitioner has invoked not only its rights under the First Amendment of the United States Constitution, but also the separate protections afforded by Article I, § 7 of the Pennsylvania Constitution. That charter provides that: " The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty." This state constitutional protection of free speech rights is not mere window dressing or surplusage to federal protections of free speech. Rather, this Court "has repeatedly determined that Article I, § 7 affords greater protection to speech and conduct than does its federal counterpart, the First Amendment." *Pap's A.M. t/d/b/a Kandyland v. City of Erie*, 553 Pa. 348, 719 A.2d 273, 283 (1998) (Castille, J., joined by Zappala, J., concurring) (listing cases), *reversed and remanded*, 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). Pertinent to the prior restraint question here, this Court has repeatedly recognized that "Article I, section 7 was 'designed to prohibit the imposition of prior restraints upon the communication of thoughts and opinions.' " *Commonwealth v. Tate*, 495 Pa. 158, 432 A.2d 1382, 1388 (1981), *quoting Goldman Theatres, Inc. v. Dana*, 405 Pa. 83, 173 A.2d 59, 62 (1961), *cert. denied*, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961). Moreover, this special protection for free speech rights is deeply rooted in a history that is unique to Pennsylvania:

The "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open," has special meaning for this Commonwealth, whose founder, William Penn, was prosecuted in England for the "crime" of preaching to an unlawful assembly and persecuted by the court for daring to proclaim his right to a trial by an uncoerced jury. It is small wonder, then, that the rights of freedom of speech, assembly, and petition have been guaranteed since the first Pennsylvania Constitution, not simply as restrictions on the powers of government, as

found in the Federal Constitution, but as inherent and "invaluable" rights of man.

*Tate,* 432 A.2d at 1388. The unflinching dedication of Pennsylvanians to freedom of expression has been matched by deed as much as constitutional promise, from Philadelphia lawyer Andrew Hamilton's successful defense at John Peter Zenger's libel trial to today.

On the merits of the instant application, it is clear to me that respondents did not prove their entitlement to the extraordinary relief represented by the lower court's unprecedented prior restraint, which silenced petitioner by judicial decree for the two weeks preceding this election. The television advertisements in question did not expressly advocate the election or defeat of a particular candidate in anything remotely resembling the terms that were condemned in *Buckley.* I am aware that the parties cite competing lines of interpretive authority on the question of what approach to *Buckley* should govern the analysis. Although there is something to be said on both sides of the question, a fact also reflected in commentary on the subject, this merely proves that respondents did not have a clear entitlement to relief in the form of a prior restraint. This circumstance weighs heavily in favor of reviewing the issue. In light of the procedural posture of this case, and in light of the prior restraint and free speech concerns at issue, injunctive relief was certainly inappropriate. Accordingly, I would vacate the order below, and I would set the matter for full briefing on the state and federal constitutional issues presented.

I would not simply ignore the obvious importance of this case. Hence, I respectfully dissent.

SAYLOR, Justice, dissenting.

This matter involves a conflict between a state election law which the common pleas court has apparently construed as proscribing certain third-party independent advertising expenditures related to a state-wide judicial election, and the constitutionally protected right of free expression as exercised through such expenditures. I share Mr. Justice Castille's

conclusion that the injunction as entered by the common pleas court cannot be fully reconciled with prevailing First Amendment jurisprudence in the campaign finance arena. Thus, I also favor the exercise of our jurisdiction given the applicable legal authority and the interests involved.

Rather than vacate the common pleas court's order in its entirety, however, I would instead narrow its effect. Respondents' complaint challenged the airing of two television advertisements, one which focuses upon the qualifications, record, and experience of the Republican candidate for the Pennsylvania Supreme Court, presently a sitting judge of the Superior Court, the Honorable Michael Eakin, while the other was critical of the result in two criminal cases in which the Democratic candidate, the Honorable Kate Ford Elliott, participated in her capacity as a judge of the Superior Court. Both parties appear to agree that the election laws at issue would on their face subject Applicant to organizational, disclosure, and reporting requirements. Both also appear to agree that the statute should be read in light of First Amendment principles which accord protection from such regulation to advocacy focusing upon election issues that does not expressly sponsor the election or defeat of an identified candidate. Applicant urges that neither ad falls within this category, as neither contains a specific exhortation to vote for or against a candidate. Respondent, on the other hand, urges that the content of the electoral message is relevant, such that express candidate advocacy is present if when read as a whole, and with limited reference to external events, it could be susceptible of no other reasonable interpretation but as an exhortation to vote for or against a specific candidate.

As Applicant's position is more closely aligned with the specific directives of the United States Supreme Court as reflected in a prevailing body of jurisprudence, and Respondents' contextual approach is constructed upon a minority position, I simply cannot conclude that a clear right to relief was established on the terms of the arguments presented concerning the guiding First Amendment standard.

As indicated, however, although I do not believe that the preliminary injunction can be justified based upon the legal standard advocated by Respondents in light of existing decisional law, I would not vacate the injunction in its entirety, but rather, would limit its scope based upon a factual distinction between the two advertisements at issue. With regard to the advertisement focusing upon general qualifications, accomplishments, and experience, although candidate specific, the message would seem to fall plainly within the realm of issue advocacy. The second advertisement, however, merely focused on the results of two criminal cases in which an appellate court jurist participated and would seem to more closely skirt the boundary between issue and candidate advocacy. Significantly, such communication was devoid of any form of meaningful analysis concerning the reasoning applied to reach the decisions, or an alternate line of reasoning that would justify a contrary result, and thus, functioned at a level of abstraction restrictive of issue-type evaluation of judicial performance. In my view, the anecdotal discussion of a fractional component of a judge's record at this level of abstraction is distinguishable from the more general form of issue advocacy, albeit candidate specific, represented by the qualifications/accomplishments/experience ad. This brings this form of advertising closer to the category of express candidate advocacy, which would subject the Applicant advertiser to the organizational, disclosure, and reporting requirements of the Pennsylvania Election Code.

In such circumstances, I would have entered an order invoking this Court's jurisdiction to restrict the effect of the preliminary injunction in accordance with the foregoing.

Justice NEWMAN joins this dissenting statement.