414 A.2d 48

**Steven H. BRUSH, on behalf of himself and as representative of a class, Michael J. Mullen, on behalf of himself and as representative of a class, Kimberly Getz, on behalf of herself and as representative of a class**

**v.**

**The PENNSYLVANIA STATE UNIVERSITY, Board of Trustees of the Pennsylvania State University, John W. Oswald, Individually and as President of the Pennsylvania State University, M. Lee Upcraft, Individually and as Director of Residence Hall Programs of the Pennsylvania State University.**

**Appeal of Steven H. BRUSH, on behalf of himself and as representative of a class, and Kimberly Getz, on behalf of herself and as representative of a class.**

Supreme Court of Pennsylvania.

April 24, 1980.

244

Virginia B. Eisenstein, State College, for appellants.

Delbert J. McQuaide, Grant H. Fleming, State College, for appellees.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

■ Appellants, the class of canvassers and the class of residents, challenge Pennsylvania State University's regulation of residence hall canvassing. Appellants claim the regulations impermissibly restrict freedoms of speech and assembly guaranteed by the first and fourteenth amendments to the Constitution of the United States and Article I, Section VII of the Pennsylvania Constitution. Thus, they ask this Court to reverse the order of the equally divided Superior Court affirming a decree of the Court of Common Pleas of Centre County, entered after a full hearing, denying them injunctive relief against the challenged regulations. We conclude that the Superior Court and the court of common pleas correctly determined on this record that the Penn State regulations are constitutionally permissible limitations on the time, place and manner of the exercise of these rights. Accordingly, we affirm.

Penn State operates 66 residence halls providing housing and meal service for approximately 11,600 students. Access to a residence hall is gained by way of a separate entrance in the main lobby and main floor common areas. Living areas of the halls, including individual rooms, are located apart from those common areas. In the larger multi-story residence halls, living areas are located on the upper floors of

the hall and are reached by elevators.[1] All residence halls exhibit "No Trespassing" signs at the entrances and exits.[2]

In the living areas of the residence halls, rooms are used for sleeping, studying and entertaining within the restrictions of the Penn State visitation policy and general rules of conduct. These individual rooms, however, do not contain bathrooms, laundry facilities or telephones. Those facilities, used in common by all residents of the floor, are located at the center of each floor and may be reached only by traversing the common hallways. Thus, the resident must pass through the common hallway when using the shower, lavatory or any other common facility located on that individual's floor. Common study areas, located on each floor for the students' use, are also reached by passing through the common hallway. In addition, telephone calls may be placed and received only at the telephones located in the hallway.

Visitors seeking to contact a resident may enter the main lobby of the residence hall and telephone the individual. In accordance with Penn State visitation policy, guests may then visit the resident in that student's room. If a guest is of the opposite sex, visitation rules require the resident to escort that person through the common hallway. Resident Assistants live on the floors to ensure that no unauthorized persons gain entrance to the living areas.

Before February 15, 1975, Penn State prohibited all canvassing in its residence halls. On that date the University adopted the regulations appellants challenge.[3] These regu-

1. In the smaller single-story residence halls these living areas are located on the ground level, but nonetheless are separate from the lobby. Entrance to those areas is similarly restricted.

2. "NO TRESPASSING
   PRIVATE RESIDENCE
   This building is restricted to persons assigned as residents, their invited guests and authorized University personnel."
   The record indicates that members of the public are not permitted in the residence halls absent an invitation from a resident. In fact, other University students similarly are not permitted to enter a residence hall, other than their own, without an invitation.

3. The Penn State canvassing regulations are as follows:

lations permit canvassing by registered individuals in the living areas of individual residence halls if, at the beginning of the school term, a majority of residents vote in favor of "open" canvassing. A vote to ban canvassing precludes canvassers from reaching the living areas of the halls without previously obtaining an invitation from a resident. Canvassers may obtain lists of hall residents and reach each resident by telephone. If invited to an individual's room, the canvasser may enter the living area of the hall as would any other invited guest. Under the regulatory provisions a registered canvasser still may contact hall residents in the dining hall buildings and the main lobbies of each residence hall. Canvassers also may use conference rooms located in the main common area where a large group of residents may be assembled for lectures, discussions or other activities. Finally, canvassers may post notices on residence hall bulletin boards or place pamphlets in residents' mailboxes, provided each pamphlet is individually addressed.[4]

"a. Canvassing shall be defined as any effort to influence student opinion, gain support, or promote a particular cause or interest, specifically excluding any solicitation or fund raising as defined by current University policy.

b. Students, student organizations, residence hall house governments and area governments, and outside interests are eligible to canvass in the residence halls.

c. Canvassing may occur in individual residence hall buildings unless restricted by a majority vote of the residents of that building at the beginning of each academic year. Canvassing is permitted in all main lobbies of residence halls.

d. Canvassing may occur in dining hall buildings. Canvassing in dining rooms is prohibited.

e. Canvassing shall be restricted to the hours of 11:00 a. m. to 11:00 p. m.

f. Any canvasser must register with the area coordinator no less than 24 hours prior to the canvass and must clearly understand all provisions of canvassing regulations before canvassing may begin.

g. When contacting students in their rooms, canvassers must knock before entering, identify themselves, announce their specific purpose, enter an individual room only by the express consent of the resident, and leave immediately if the resident so requests.

h. Canvassers must abide by all University rules and regulations. Violators will be subject to referral to the Office of Conduct Standards and/or civil or criminal prosecution."

4. In addition to the canvassing regulations challenged on this appeal, there are Penn State regulations applicable to other aspects of

A majority of students residing in 66% of the residence halls voted to permit "open" canvassing during the term immediately following implementation of the February 15 regulations. After the next election, Fall Term 1975, only 32% of the residence halls voted to have "open" canvassing.

In the spring of 1975, appellant Steven Brush sought to canvass the living areas of "closed" residence halls. When notified of Penn State's intention to enforce the canvassing regulations, Brush along with appellant Michael Mullen, a resident of a "closed" hall who sought to receive the information canvassers might disseminate, filed a class action seeking an injunction against Penn State's enforcement of the canvassing regulations.[5] The Court of Common Pleas of Centre County rejected appellants' initial request for a preliminary injunction. After a hearing, at which all parties introduced extensive testimony, the court dismissed appellants' complaint and refused to grant permanent injunctive relief. In holding that the Penn State canvassing regulations are a reasonable restriction on the place and manner of expression, the trial court found the living areas of the halls essentially equivalent to the interior of a private home. In addition, the court concluded that "there are reasonable alternatives available to preserve freedom of speech, expression and association," due to "the number of practical alternatives available to a person who desires to communicate. . . ." As previously indicated, on appeal an equally divided Superior Court affirmed. We granted allowance of appeal.

Appellees suggest that residence hall operations are not in any manner financed by state or federal funds. They claim the revenues received from the residents provide the sole

residence hall life, including guest visitation, quiet hours, and solicitation of funds or sales. Many of these regulations are subject to the vote of hall residents. The vote determines which regulations are to be adopted for use in that residence hall during the ensuing term. See Penn State 1975–76 Student Handbook.

5. Appellant Kimberly Getz intervened on behalf of "closed" hall residents seeking to receive information when appellant Mullen moved out of the residence hall during the pendency of this action.

funds for residence hall maintenance. Thus, appellees argue, the self-governance of the halls by residents does not bear the imprimatur of "state action." We disagree. When presented this question on previous occasions, federal courts have decided that the nexus between Penn State and the Commonwealth justifies a finding of state action for purposes of the Fourteenth Amendment. *Benner v. Oswald*, 592 F.2d 174 (3d Cir. 1979) (whether students may participate in the section of trustees). *Klain v. Pennsylvania State University*, 434 F.Supp. 571 (M.D.Pa.1977), aff'd 577 F.2d 726 (3d Cir. 1977) (challenge to Penn State's mandatory retirement policy). See also *Isaacs v. Board of Trustees of Temple University*, 385 F.Supp. 473 (E.D.Pa.1974). See generally, *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) and *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

■ Indeed this record reflects that Penn State built, manages and maintains the residence halls. Penn State employs a Director of Residence Hall Programs whose responsibilities include supervision of residence hall operations. This director develops and implements the Penn State residence hall policies and regulations. On the facts of this case, we agree with those courts and hold that Penn State's connection with residence hall operations supports a finding of state action.

■ We will not disturb the determination of the trial court with respect to the "physical aspects of the dormitory structures." That court found that it was "unrealistic" to find the "upper floor hallway and bedroom door of a dormitory resident to be the same as a public street and the front door of a private dwelling." The court concluded "that the upper floor areas of the residence halls are private living quarters . . . ." Because the record reflects that Penn State's extensive residence hall regulations are designed to maintain residents' privacy, security and quiet, we conclude that the trial court's findings are adequately supported and may not be disturbed on appeal. *Commonwealth Trust Co.*

*v. Szabo,* 391 Pa. 272, 277, 138 A.2d 85, 87 (1957); *Bohachevsky v. Sembrot,* 368 Pa. 228, 81 A.2d 554 (1951); *Custis v. Serrill,* 321 Pa. 154, 183 A. 774 (1936).[6]

■ Given these specific findings by the trial court, based upon the extensive testimony in the record, we must conclude that the challenged regulations do not abridge freedom of expression.[7] In *Martin v. City of Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943), the Court held invalid a municipality's ordinance which precluded canvassers from ringing the doorbells of private homes. The Court stated that "[o]rdinances of the sort now before us may be aimed at the protection of householders from annoyance, including intrusion upon the hours of rest, and at the prevention of crime." However, the "dangers of distribution [of pamphlets] can so easily be controlled by traditional legal methods, leaving to each householder the full right to decide whether he will receive strangers as visitors." Id. at 144, 147, 63 S.Ct. at 864, 865. Thus, the Court concluded that individual householders could protect themselves from undesirable intrusions by displaying signs indicating the owner's desire to exclude canvassers. *Martin,* however, "never intimated that the visitor could insert a foot in the door and insist on hearing." *Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949). In fact, it has always been recognized that dwellers have a right to exclude trespassers from the interior of the dwelling. *Rowan v. Post Office Department,* 397 U.S. 728, 737, 90 S.Ct. 1484, 1490, 25 L.Ed.2d 736 (1970). In

6. That members of the public may make an occasional dormitory visit does not contravene the trial court's finding that the living areas of a residence hall are private in nature. A place does not necessarily become a "public forum" for purposes of the first amendment even where members of the public are freely permitted to visit. *Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976). Of necessity, the limited visitation of the Penn State residence halls by others does not require the opening of those living areas to canvassing.

7. Because the parties have not squarely presented the issue of whether these regulations are an improper delegation of decision-making authority, we need not reach that issue today. See *City of Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 677, 96 S.Ct. 2358, 2364, 49 L.Ed.2d 132 (1976) and cases cited therein.

light of the trial court's specific finding that the hallways in the residence hall living areas are not "the same as a public street," nor "open to public use," we hold that the Penn State regulations permissibly bar canvassers from those areas.

It must be remembered that a regulation based on content, of course, is invalid. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); *Lehman v. City of Shaker Heights*, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974). Here, however, we are presented with a time, place or manner regulation. Such a regulation is constitutionally permissible if reasonable and in furtherance of a substantial governmental interest. *Commonwealth v. Sterlace*, 481 Pa. 6, 391 A.2d 1066 (1978); *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).[8]

As the trial court found here, Penn State seeks to permit the residents of "closed" halls to protect their interest in privacy when performing personal household activities, such as laundering clothing, bathing or using the telephone. Penn State also seeks to prevent breaches of security by regulating those halls where a majority of residents decline the "open" canvassing option. Finally Penn State maintains an understandable interest in promoting quiet study conditions for residents. The canvassing regulations challenged here promote these legitimate goals of Penn State by providing its students with living quarters suitable to the university environment.

Importantly, these regulations in no respect prohibit the canvasser from utilizing alternative means of com-

---

8. It is also important to consider "whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." *Grayned v. City of Rockford*, 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972). See also *Lloyd Corporation v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972). Moreover, "[t]he state, no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated. *Adderly v. Florida*, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966).

munication. As the Court in *Linmark Associates, Inc. v. Township of Willingboro*, 431 U.S. 85, 97 S.Ct. 1614, 50 L.Ed.2d 155 (1977), recognized, "First Amendment concerns are less directly implicated" when the regulation "restricts only one method of communication, . . . since laws regulating the time, place, or manner of speech stand on a different footing from laws prohibiting speech altogether." Id. at 93, 97 S.Ct. at 1618. Penn State, in this case, has not totally prohibited the canvasser's speech. The regulations here permit canvassing in the main lobby and fully afford canvassers the opportunity to telephone residents, mail information and hold meetings in Penn State facilities. These alternatives are reasonably effective means by which canvassers may reach hall residents.

Appellants argue that on the rationale of *Linmark*, they are entitled to canvass the residence hall living areas because the direct confrontation of residents at their individual room doors is the more effective means of communication. We reject this claim. As the Third Circuit Court of Appeals recently stated, "*Linmark* does not stand for the proposition that the First Amendment requires that a [speaker] in all instances be able to use the techniques he considers most effective. Rather, *Linmark* teaches that a realistic appraisal must be made of the alternative methods of communication. . . ." *American Future Systems, Inc. v. Pennsylvania State University*, 618 F.2d 252, 259 n.18 (3d Cir. 1980).[9] See also *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). We believe the trial court makes a "realistic appraisal" of the canvassing alternatives and properly concluded that regulations "le[ft] open ample alternative channels of communication." *Linmark*, supra at 93, 97 S.Ct. at 1618; *Virginia State Board of Pharmacy*, supra at 771, 96 S.Ct. at 1830.

**9.** In *American Future Systems*, the Third Circuit upheld the Penn State regulation forbidding sales demonstrations and solicitations in residence halls against a constitutional challenge on first amendment grounds.

We conclude that Penn State has not impermissibly regulated canvassers based upon the content of the message they seek to convey. See *Erznoznik*, supra; *Lehman*, supra. Rather, the regulation furthers a legitimate governmental interest by reasonably restricting the place and manner of expression. *Sterlace*, supra; *Grayned*, supra. Because the challenged regulations recognize the private nature of living areas in student residence halls and provide reasonable alternatives for the communication of appellants' message, we affirm the denial of injunctive relief.

Order of the Superior Court affirming the Decree of the Court of Common Pleas of Centre County dismissing the request for injunctive relief is affirmed. Each party pay own costs.

MANDERINO, J., did not participate in the decision of this case.