505 A.2d 1053

The Pennsylvania State University, Milton S. Hershey Medical Center, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Respondent.

Argued November 13, 1985, before President Judge CRUMLISH, JR. and Judges ROGERS, CRAIG, MACPHAIL, DOYLE, COLINS and PALLADINO.

*R. Mark Faulkner, McQuaide, Blasko, Schwartz, Fleming & Faulkner, Inc.,* for petitioner.

*G. Thompson Bell,* Assistant General Counsel, with him, *Elisabeth S. Shuster,* General Counsel, for respondent.

*Jeffrey Ivan Pasek,* Of Counsel: *Cohen, Shapiro, Polisher, Shiekman & Cohen,* for Amicus Curiae, The Pennsylvania Chamber of Commerce.

OPINION BY JUDGE CRAIG, March 4, 1986:

Where one of the supervisors of a force of patrol officers, who maintain security around the clock seven days a week at a 35-building medical center, is a sergeant who refuses to work on any Saturday because of religious belief, is it a reasonable accommodation, without imposing undue hardship upon the medical center's interests, to require that employer grant the sergeant leave as to his 26 scheduled Saturdays of work each year, while meeting the institution's security needs by

(a) attempting to replace him with supervisory or non-supervisory officers working his Saturday shift on a volunteer basis for premium pay which otherwise would not be due, or

(b) compelling such other employees to replace him, with premium pay, if insufficient numbers of them volunteer to do so, or

(c) filling his supervisory position on each of those Saturdays with non-employee guards hired from an outside security firm?

The employer, the Milton S. Hershey Medical Center of Pennsylvania State University, has brought this appeal from an order of the Pennsylvania Human Relations Commission which required that the Center (1) reinstate the discharged complainant, Wallace N. Swinehart, to his position as Security Sergeant, (2) never schedule him for work between Friday sunset and Saturday sunset, and (3) repay him the net amount of backpay lost, with interest.

Our review is limited to a determination of whether the commission's adjudication is in accordance with the law and whether the findings of fact supporting its conclusions are based on substantial evidence. *Chester Housing Authority v. Human Relations Commission,* 9 Pa. Commonwealth Ct. 415, 305 A.2d 751 (1973).

The commission's findings of fact, all supported by substantial evidence in a hearing record, embody the factual background of this case, as follows:

Sergeant Swinehart has a sincerely held religious belief, as a member of the Worldwide Church of God, against working at his job on his Sabbath, observed from Friday sunset until Saturday sunset. Formerly a patrol officer, he had attained the supervisory rank of security sergeant with the Medical Center, which operates a hospital, medical school, research facilities and outpatient treatment clinics occupying 35

buildings on 388 acres of land. The Center's security department provides security coverage for the Center around the clock, seven days a week.

Security officers perform routine patrol duties, subdue unruly patients and visitors, respond to emergencies and also transport blood and drugs between the center and other facilities; they participate in drills for various emergency situations, such as fires.

In the fall of 1980, the Center decided to increase weekend security coverage on the daylight shift—Sergeant Swinehart's shift—to a minimum of three officers at all times because of increased activity at the Center. At that time four people, including the sergeant, were assigned to the Center's daylight shift, with two or three working on any given day.

When Sergeant Swinehart declined to work on Saturday because of his religion, the Center attempted to accommodate him by seeking volunteers from the security department to cover his assigned Saturdays and, alternatively, by arranging a transfer for him into a position requiring no Saturday work; neither accommodation could be implemented.

Declining to incur additional expense in order to accommodate the sergeant, the Center contacted one of three local security firms to inquire about hiring a guard as a part-time substitute, and learned that the firm could assign two guards consistently, at $5.75 hourly; the sergeant's pay was $58 per day.

After the Center terminated the sergeant following his refusal to work Saturdays, he filed with the commission a complaint against the Center for violation of section 5(a) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §955(a), which declares that it is an unlawful discriminatory practice

(a) For any employer because of the . . . religious creed . . . of any individual . . . to dis-

charge from employment such individual, or to otherwise discriminate against such individual with respect to . . . terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required. . . .[1]

After a commission staff investigation reached a finding of probable cause, and conciliation efforts were unsuccessful, three members of the commission conducted a public hearing and thereafter reached the recommendation which the commission embodied in its order.

Relying primarily upon its own earlier opinion in the case of *Snyder v. Pennsylvania Power & Light Co.*, Docket No. E-17361, Pennsylvania Human Relations Commission, the commission here stated—solely in one of its conclusions of law—that Sergeant Swinehart's proofs satisfied the elements of a prima facie case by establishing that:

1. He had a sincerely held religious belief which prevented him from working upon his Sabbath;

---

[1] The sergeant's second complaint was amended to add a claim as to violation of section 5.1 of the Act, 43 P.S. §955.1, which specifically states that it is an unlawful discriminatory practice for a state agency to disqualify any person from holding employment "because of his observance of any particular day or days or any portion thereof as a Sabbath or other holy day in accordance with the requirements of his religion." This section applies except with respect to positions involving the public health or safety or duty whenever needed, or where the employee's presence on the particular days is required. The commission held section 5.1 to be inapplicable on the ground that the Center is not a state agency, citing the separate opinion of Judge HOFFMAN of the Superior Court in *Brush v. Pennsylvania State University Board of Trustees*, 249 Pa. Superior Ct. 164, 180, 375 A.2d 810, 816-21 (1977), *aff'd*, 489 Pa. 243, 414 A.2d 48 (1980). The commission's determination on that point has not been appealed and therefore is not before us.

2. He informed his employer of his belief and of his unwillingness to work on that day of the week; and

3. His employer took adverse action against him by discharging him because of his religious beliefs.

Although the commission opinion also cited *McDonnell Douglass Corporation v. Green,* 411 U.S. 792 (1973), and *General Electric Corp. v. Pennsylvania Human Relations Commission,* 469 Pa. 292, 365 A.2d 649 (1976) as authority for those three prima facie case elements, those two court decisions relate respectively to race and gender discrimination in employment and therefore do not provide direct authority on the point.

Although the evidence here indeed establishes that the sergeant met the first two elements of a prima facie showing by proving his sincerely held religious belief and that he had informed the employer concerning it, this record lacks substantial evidence to establish, as a matter of fact or law, that the Center discharged the sergeant *because of his religious beliefs.* More precisely, the record establishes that the Center discharged the sergeant because of his refusal to work on Saturdays—a refusal stemming from his religious beliefs— and did not accommodate his belief by making provision to excuse him from, and replace him in, all Saturday work.

In its opinion in this case as well as in *Snyder,* the commission further held that, even if the employee has established such elements of a prima facie case, the employer can overcome that showing by proof that it could not reasonably accommodate the employee's religious beliefs without undue hardship to its business operations.

In the *Snyder* opinion, the commission had noted that the Pennsylvania Supreme Court in *General*

*Electric Corporation* held that Title VII of the Federal Civil Rights Act of 1964, 42 U.S.C. §2000(e), is analogous to the Pennsylvania Human Relations Act. The commission therefore turned to that federal statute for its definition of "religion" in 42 U.S.C.A. §2000(e)(j) as including all aspects of religious observance and practice, and as calling for an employer to demonstrate

> that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business.

The kinship between the Pennsylvania and Federal acts, as noted by the Pennsylvania Supreme Court, is indeed clear. Accordingly, the decision of the United States Supreme Court in *Trans World Airlines v. Hardison,* 432 U.S. 63 (1977) is pertinent. That case also involved the discharge of an employee whose religion forebade Saturday work. TWA, the employer, along with the union, refused to accommodate him by violating seniority provisions or by allowing him to work a four-day week, which latter approach would have caused a depletion of manpower in another operation or required payment of premium pay to his replacements. A majority of the United States Supreme Court held that the employer need not violate the collective bargaining agreement and that to be required to do so would involve the incurring of undue hardship. Of importance was the nature of TWA's operation, involving twenty-four-hour-per-day aircraft maintenance. The Supreme Court, noting that the seniority system itself constituted a reasonable accommodation to the preference and beliefs of individual employees, also concluded that requiring the employer to bear more than de minimis costs would constitute an undue hardship and would also amount to a prefer-

ence on the basis of religion, contrary to the First Amendment.

Here the commission properly did not end its analysis with the statement that the Center discharged the sergeant "because of his religious beliefs." The commission proceeded to consider, with respect to the reasonableness of accommodation and undue hardship upon the business, the following factors: (1) the nature of the business, (2) the frequency and duration of the proposed accommodation, (3) the nature and uniqueness of the work done by the employee, (4) the likelihood of the employer incurring costs, including decreased efficiency in the business, and (5) the extent to which other employees would be burdened.

With respect to the amount of cost, the commission noted that it had "explicitly rejected" the de minimis standard applied by the United States Supreme Court in *Trans World Airlines,* and that it reaffirmed that rejection in the present case, preferring to rely upon the commission's own reasoning in *Snyder*—that "undue" hardship exists only where the employer can show that it has incurred "substantial" costs.

In light of the Pennsylvania Supreme Court's favorable view of the United States Supreme Court's interpretation of the federal analogue to the Pennsylvania statute, and the commission's own adoption of the federal law's definition of "religion," there is no sound legal basis for the commission's rejection of the existing judicial interpretation of the reasonable accommodation and undue hardship standards embodied in that self same definition.

Specifically, the commission here held that, when other employees appeared to be unavailable to replace the sergeant voluntarily on Saturdays, the Center fell short of pursuing a reasonable accommodation when it did not try to get other employees to work on Saturdays by offering premium pay or by compelling them

to work in the sergeant's place for premium pay. Alternatively, the commission held that the Center could have found a replacement for the sergeant by hiring security personnel from an outside firm, but the record lacks evidence establishing that such an approach would have provided an equivalent replacement for Sergeant Swinehart's role as a supervisor of the patrol force. Although the evidence showed that an outside firm could avoid excessive rotation with respect to such replacements by confining them to two particular individuals, nothing in the record indicates that such replacements could perform the supervisory functions spelled out in the sergeant's position description.

However, in its *Snyder* case, the commission decided that the utility company employer in that case did *not* violate the Act by refusing to release a construction worker from Saturday work, in view of the need for such services to be available every day of the week and around the clock because of emergencies which arise in the utility's operations.

Thus considering the nature of the employer's business, the weekly frequency and permanent duration of the accommodation and the nature of the employee's work, the commission's own approach in *Snyder* suggests strongly that the accommodation demanded by the commission here would transcend reasonableness.

Where the nature of the work is the maintenance of a continuous security operation, and a supervisor is involved, to mandate such an accommodation by an employer is just as unreasonable as it would have been for the commission to compel an accommodation for the construction employee's Sabbath in the face of the utility industry's needs in *Snyder*. The required accommodation for this employee would involve half of the Saturdays of every year throughout his working

career. Moreover, his status as a supervisor necessarily makes his services more important and less easily replaced than those of patrol officers working for the Center.

The essence of security work, involving patrolling and policing, is its unceasing nature. Although the Center's security force, according to this record, is not fully equivalent to a public police agency, the legislature has clearly recognized that serious obstacles are present with respect to providing days off —particularly weekend days off—in security operations. That legislative indication is in section 5.1 of the Act, 43 P.S. §955.1, which exempts state agencies from being required to make provision for holy day observance with respect to positions involving public safety, among others. Although the commission decided that the employer here is not a state agency subject to section 5.1, it nevertheless sheds legislative light upon what accommodation is reasonable with respect to protective service operations.

Finally, to burden other employees by compelling them to replace the sergeant on Saturdays, even with premium pay, clearly would constitute a burden on those employees. Such an application of the Act hence would contravene the establishment clause of the First Amendment. Although commission counsel contends that the Center did not raise that question below, the Center's proposed hearing brief to the commission brought up that principle, which was all that could be done before the commission, in its present decision, rejected the United States Supreme Court's view of accommodation requirements which would be constitutionally unacceptable. *See also* 2 Pa. C. S §703.

Beginning with *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971) the United States Supreme Court established a three-part test for identifying when gov-

ernment action does not violate the establishment clause of the First Amendment. To be valid, it must

(1) have a secular legislative purpose;

(2) neither advance nor inhibit religion; and

(3) result in no excessive governmental entanglement with religion.

*Larkin v. Grendel's Den*, 459 U.S. 116 (1982), adhering to that test, invalidated a statute which permitted churches to veto the issuance of liquor licenses within five hundred feet. *Stone v. Graham*, 449 U.S. 39 (1980) also followed it in invalidating a law which required the posting of the ten commandments in public schools.

To construe the Pennsylvania Human Relations Act so that an employer operating a round-the-clock security operation must compel some employees to work on weekends, in order to accommodate the religious beliefs of others, would excessively involve government in the implementation of a particular belief by interfering with the individual choices of third persons, in order to achieve the accommodation.

Accordingly, the commission's decision is reversed.

## ORDER

Now, March 4, 1986, the order of the Pennsylvania Human Relations Commission dated November 1, 1984, here appealed, is reversed.

---

DISSENTING OPINION BY JUDGE COLINS:

I must respectfully dissent from the scholarly, well-written opinion of the majority.

In my opinion, the case of *Trans World Airlines v. Hardison*, 432 U.S. 63 (1977), relied upon by the majority to state that it would be an "undue hardship" for petitioner to accommodate complainant, is

improperly applied here. First, *Hardison* involved a case where seniority provisions of a collective bargaining agreement had to be set aside to accommodate an employee's religious beliefs, and it is most frequently cited as a case upholding the validity of seniority provisions in the face of discriminatory consequences. *E.g. Ford Motor Co. v. EEOC*, 458 U.S. 219, 229 (1982).

The test of "undue hardship" is strictly applicable only in cases brought under Title VII of the Federal Civil Rights Act of 1964, 42 U.S.C.A. §2000(e)(j). We should not be bound by the dicta of *Hardison* concerning federal civil rights law to narrowly construe provisions of the Pennsylvania Human Relations Act, especially when in cases involving handicapped and disabled persons we have read similar accommodation requirements in other parts of our state law more broadly.[1]

Furthermore, federal courts substituting the *Hardison* test for a more liberal test used by a lower tribunal have usually remanded for specific findings on the issue of undue hardship rather than reversing the lower tribunal outright. *See Ward v. Allegheny Ludlum*

---

[1] An employer is required to make in the case of handicapped or disabled persons "reasonable accommodations . . . provided that such modification shall not impose an undue hardship." 16 Pa. Code §144.14(a) ; *see Laws v. Philadelphia County Board of Assistance, Department of Public Welfare*, 50 Pa. Commonwealth Ct. 340, 412 A.2d 1377 (1980). In *Laws*, we construed the reasonable accommodation requirement to require "every reasonable effort" of the employer to accommodate its handicapped or disabled employee. *Id.* at 345-46, 412 A.2d at 1380.

Section 12(a) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §962(a), directs us to liberally construe its provisions for the accomplishment of the purposes thereof. Other states have used different hardship tests, *e.g. State Division of Human Rights v. Carnation Co.*, 42 N.Y. 2d 873, 397 N.Y.S. 2d 781, 366 N.E. 2d 869 (1977) (significant increase in costs must be shown).

*Steel Corp.,* 560 F.2d 579 (3d Cir. 1977); *Niederhuber v. Camden County Vocational & Technical School District Board of Education,* 495 F. Supp. 273 (D. N.J. 1980). A quick perusal of those two cases, which likewise involved members of the Worldwide Church of God, the faith to which complainant adheres,[2] will reveal that to support a finding of undue hardship, the record must present evidence of undue hardship, such as that a Sabbath accommodation would affect the employer each and every week (not just half of all Saturdays, as the majority states); would cause a conflict with such collective bargaining provisions as exist; or would require the employer to expend more than *"de minimis"* additional costs in an effort to accommodate the employee. *See Ward,* 560 F.2d at 583; *Niederhuber,* 495 F. Supp. at 279-280.

I also disagree with the majority refusal to face the free exercise issue here as it is so critical that it must be considered. In my view, the petitioner is a state actor for purposes of the Fourteenth Amendment in light of the Third Circuit decisions of *Krynicky v. University of Pittsburgh,* 742 F.2d 94 (3d Cir. 1984), *cert. denied,* 105 S.Ct. 2018 (1985) and *Braden v. University of Pittsburgh,* 552 F.2d 948 (3d Cir. 1977). Consequently, the free exercise clause is directly applicable to the employer and the test in such cases is no longer merely whether the complainant is burdened, but whether the state may justify its limitations on religious liberty by showing that it is essential to accomplish an overriding governmental interest. *Bob Jones University v. United States,* 461 U.S. 574 (1983); *United States v. Lee,* 455 U.S. 252 (1982).

---

[2] It is quite clear that the identity of the complainant's faith can play no role in determining whether the employer has made reasonable efforts to accommodate him, so long as the religious belief is (1) sincerely held, and (2) religious in nature, in his scheme of things. *Africa v. Commonwealth of Pennsylvania,* 662 F.2d 1025, 1029-31 (3d Cir. 1981).

The cases of *Sherbert v. Verner,* 374 U.S. 398 (1963) and *Thomas v. Review Board of Indiana,* 450 U.S. 707 (1981) held it unconstitutional to withhold unemployment benefits on the basis of conduct justified by claimant on religious grounds. Both *Sherbert* and *Thomas* involved the refused accommodation of an employee's religious beliefs by his or her employer resulting in termination and the subsequent attempted denial of unemployment benefits thereafter. This Court has expressly relied on these cases to resolve past conflicts of accommodation of religious beliefs, withholding of employment benefits, and claimed infringements of civil rights. *See Simpson v. Unemployment Compensation Board of Review,* 69 Pa. Commonwealth Ct. 120, 128-30, 450 A.2d 305, 309-11 (1982); *Southeastern Pennsylvania Transportation Authority v. Unemployment Compensation Board of Review,* 54 Pa. Commonwealth Ct. 165, 420 A.2d 47 (1980). In my view, an accommodation is independently required by the free exercise clauses of the United States and Pennsylvania Constitutions[3] where a public employer is involved, and this accommodation is not necessarily governed by the rules applicable to the Federal Civil Rights Act of 1964 and the Pennsylvania Human Relations Act.

The majority argues that to require an employer to accommodate an employee seeking to be excused from work on the Sabbath day of his or her religion violates the Establishment Clause of the United States Constitution. This question was decided in the most recent term of the Supreme Court of the United States in the case of *Thornton v. Caldor,* U.S. , 86 L.Ed. 2d 557 (1985). In that case, the court held that a Connecticut statute which gave an absolute and unqualified right to all private employees not to work

---

[3] U.S. Const., amend. I; Pa. Const., art. I, §3. *See also* Pa. Const., art. I, §26.

on their Sabbath day was an unconstitutional violation of the Establishment Clause of the First Amendment.

However, the *Caldor* decision clearly contemplated that an accommodation requirement that was not absolute and unqualified and did not have a primary purpose or effect of impermissibly advancing one religion over another is certainly constitutional.[4] *Id.*, U.S. at , 86 L.Ed. 2d at 864 (O'CONNOR, J., concurring). Moreover, the Supreme Court's recent school prayer case, *Wallace v. Jaffree,* U.S. , 86 L.Ed. 2d 29 (1985), clearly suggests that a state actor like a public school may constitutionally afford a student a moment of silence so long as the primary purpose or effect of such accommodation is not to advance one sect over another. *Id.* Consequently, reasonable accommodations of the religious beliefs of an employee by a state or private employer do not constitute a prohibited establishment of religion, so long as they uphold the "governmental obligation of neutrality in the face of religious differences." *Sherbert,* 374 U.S. at 409-410.

For the reasons above, I respectfully dissent.

---

[4] The Connecticut statute struck down in *Caldor* was infirm because it advanced Sabbath-observing religions over non-Sabbath-observing religions. I express no opinion here as to the continuing constitutionality of Section 5.1 of the Pennsylvania Human Relations Act, 43 P.S. §955.1, or its applicability to the case at hand, since those issues are not part of the instant controversy.