767 P.2d 719

**FIESTA MALL VENTURE, an Arizona joint venture; Westday Associates, an Arizona Partnership; DVM Co., an Arizona joint venture; Noble "Park Central" Associates, a Texas joint venture; Los Arcos Investments Limited Partnership, an Arizona limited partnership, Plaintiffs/Appellees,**

v.

**MECHAM RECALL COMMITTEE, an Arizona non-profit corporation, Defendant/Appellant.**

No. 2 CA–CV 88–0195.

Court of Appeals of Arizona, Division 2, Department B.

Oct. 31, 1988.

As Corrected Nov. 4, 1988.

As Corrected Jan. 26, 1989.

Review Denied Feb. 7, 1989.*

---

* Gordon, C.J., of the Supreme Court, did not participate in the determination of this matter.

Murphy & Posner by Michael L. Murphy, K. Bellamy Brown, Terry L. Rakow and Roger R. Foote, Phoenix, for plaintiffs/appellees.

Alice L. Bendheim and Gary Peter Klahr, Phoenix, for defendant/appellant.

## OPINION

FERNANDEZ, Judge.

In late July and early August of 1987, members of appellant Mecham Recall Committee went to several large shopping malls in the Phoenix area in an attempt to obtain signatures on petitions to recall former Governor Evan Mecham. The owners of five of the malls filed suit on August 14 to enjoin the committee from soliciting signatures on their property. A temporary restraining order was issued on August 14 which prohibited appellant from entering the malls "to solicit signatures, present petitions or conduct expressive political activities or related activities, or otherwise trespass thereon." On August 27, the trial court issued a preliminary injunction, and this appeal followed. We affirm.

The five malls involved in this case are Fiesta Mall in Mesa, Los Arcos Mall in Scottsdale, and Metrocenter, Paradise Valley Mall and Park Central in Phoenix. Fiesta Mall has 144 tenants, Los Arcos Mall has 65 tenants, Metrocenter has 210 tenants, Paradise Valley Mall has 120 tenants and Park Central has 75 tenants. The memorandum of points and authorities filed in support of appellees' motion for preliminary injunction asserted that each of the malls has a policy of prohibiting activities other than shopping or those which promote shopping. In addition to seeking an injunction, the complaint also sought damages for trespass, nuisance and interference with prospective economic relations. The case was decided, however, strictly as a matter of appellant's constitutional right to solicit signatures in a privately owned shopping center.

## MOOTNESS

Initially, we must address the question of mootness. The purpose of appellant's mall activities was to obtain sufficient signatures for the Secretary of State to order a recall election to be held. Although that order was issued on February 1, 1988, Evan Mecham was removed from the office of governor on April 4, 1988, after he was convicted by the Arizona Senate in an impeachment trial, and the recall election was then cancelled. See *Green v. Osborne*, 157 Ariz. 363, 758 P.2d 138 (1988). Hence, regardless of our ruling, appellant will not be soliciting signatures for petitions to recall Evan Mecham.

Generally, courts refrain from determining issues which are moot. *Mesa Mail Publishing Co. v. Board of Supervisors*, 26 Ariz. 521, 227 P. 572 (1924). When, however, a case presents issues of great public importance or ones we are likely to face again, we will resolve the issues. *Fraternal Order of Police Lodge 2 v. Phoenix Employee Relations Board*, 133 Ariz. 126, 650 P.2d 428 (1982); *Camerena v. Department of Public Welfare*, 106 Ariz. 30, 470 P.2d 111 (1970). Because the issue here meets both criteria, we will address it.

## FREE SPEECH RIGHTS

Appellant concedes that the issue of its right under the First Amendment to solicit signatures in a privately owned shopping center has been settled adversely to its position. In *Hudgens v. N.L.R.B.*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976), the Supreme Court made it clear that its decision in *Lloyd Corp. v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972), held that the First Amendment does not require the owner of a private shopping center to permit persons to distribute political handbills in the center.

Therefore, if appellant has any constitutional right to conduct political activities in appellees' malls, that right must be found in the Arizona Constitution. Article II, § 6 of the Constitution provides, "Every person

may freely speak, write, and publish on all subjects, being responsible for the abuse of that right." Article II, § 5 provides, "The right of petition, and of the people peaceably to assemble for the common good, shall never be abridged."

Appellant contends that the words of those sections "differ dramatically" from the words of the First Amendment with the result that appellant may assert its free speech rights on private property. Appellant also contends that we should follow the rationale of the California Supreme Court in *Robins v. Pruneyard Shopping Center*, 23 Cal.3d 899, 592 P.2d 341, 153 Cal.Rptr. 854 (1979), aff'd, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980).

In that case, the California court held that signature soliciting for a petition to the government at a privately owned shopping mall is an activity protected by the California Constitution. The court's analysis focused on the question of whether the United States Supreme Court in *Lloyd Corp. v. Tanner*, supra, recognized the existence of federally protected property rights so as to preclude a ruling that the California Constitution created broader speech rights as to private property than the United States Constitution. In its 4–3 decision, the court in *Robins* concluded that *Lloyd* had not created any property rights which were immune from regulation under the California Constitution and that Californians could solicit signatures and distribute handbills in shopping centers pursuant to reasonable regulation by the shopping centers as to time, place and manner. The court quoted from the dissent in an earlier decision, which it then overruled. " 'It bears repeated emphasis that we do not have under consideration the property or privacy rights of an individual homeowner or the proprietor of a modest retail establishment.' " 23 Cal.3d at 910, 592 P.2d at 347, 153 Cal.Rptr. at 860, quoting *Diamond v. Bland*, 11 Cal.3d 331, 345, 521 P.2d 460, 470, 113 Cal.Rptr. 468, 478, cert. denied, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed. 2d 125 (1974) (Mosk, J., dissenting). In affirming the California Supreme Court's decision, the United States Supreme Court held that requiring a privately owned shopping center to permit individuals to exercise their free speech rights on the center's property does not violate either the shopping center owner's property rights under the Fifth and Fourteenth Amendments or the owner's free speech rights under the First and Fourteenth Amendments.

The California Supreme Court did not address the issue of state action under the California Constitution in *Robins* but instead focused on the regulation of property rights. Appellant contends that because article II, §§ 5 and 6 of our constitution do not specifically require state action and because California's constitutional language is nearly identical to that of article II, § 6 with the additional provision that, "A law may not restrain or abridge liberty of speech or press," Cal. Const. art. I, § 2, no state action is required for Arizona's free speech provisions to apply. Appellant thus concludes that the Declaration of Rights in Arizona's Constitution contains broader rights of free speech, of assembly and to petition the government than the rights enumerated in the First Amendment.

In support of its argument, appellant observes that the Arizona Supreme Court has held that the due process clause of the Arizona Constitution, art. II, § 8, provides greater rights to our citizens than its equivalent in the United States Constitution, the Fourth Amendment. In *State v. Ault*, 150 Ariz. 459, 466, 724 P.2d 545, 552 (1986), the court refused to apply the inevitable discovery doctrine to justify a search of a defendant's home under the language of the Arizona search and seizure section "regardless of the position the United States Supreme Court would take on th[e] issue." We note that, of course, state action was present in that case and that § 8, unlike § 6, expressly requires state action. The fact, therefore, that our supreme court has held that an Arizona citizen's protection against unreasonable searches and seizures is more extensive than his or her rights under the Fourth Amendment is of no assistance in determining the extent of a citizen's free speech rights under article II, § 6.

Other states have also addressed this issue. Although their resolutions of the issue are, of course, not decisive on the interpretation of our own constitution, their analysis and conclusions are enlightening. Of the ten states which have determined the issue, two have held that shopping center owners may be required to permit political activity on their premises, seven have held that they may not, and one has held that a private university may be required to permit it.

In *State v. Schmid*, 84 N.J. 535, 423 A.2d 615 (1980), the New Jersey Supreme Court reversed a trespass conviction entered against a person who was distributing and selling political materials on the campus of Princeton University, a private institution. The court held that individuals' freedoms of speech and assembly were protected against "unreasonably restrictive or oppressive conduct on the part of private entities that have otherwise assumed a constitutional obligation not to abridge the individual exercise of such freedoms because of the public use of their property." 84 N.J. at 560, 423 A.2d at 628. The court used a balancing test between expressional and property rights and held that the property owner could establish reasonable time, place and manner restrictions upon the exercise of expressional rights.

The Supreme Court of Washington addressed the issue in *Alderwood Associates v. Washington Environmental Council*, 96 Wash.2d 230, 635 P.2d 108 (1981). The shopping center in that case had obtained a temporary restraining order prohibiting persons from soliciting signatures for an initiative petition. The court noted that it had often determined that the civil liberties conferred by the state constitution are greater than those protected by the federal constitution. Its reversal of the restraining order was based in part on the fact that a state decision had been rendered and the state's citizens had patterned their conduct in reliance upon the holding of *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), which was overruled by *Lloyd* and *Hudgens*, supra. The court also concluded that the Washington Constitution's free speech and initiative provisions do not require state action and held that the provisions are applicable "when, after balancing all the interests, the balance favors the speech and initiative activity." 96 Wash.2d at 244, 635 P.2d at 116. Finally, the court ruled that a shopping center "now performs a traditional public function by providing the functional equivalent of a town center or community business block." 96 Wash.2d at 246, 635 P.2d at 117.

The Massachusetts Supreme Judicial Court, in holding that a shopping center is required to permit political activity, did not base its decision on its free speech provisions but on a constitutional provision which establishes free elections and the right of the state's inhabitants to elect officers and to be elected to public office. *Batchelder v. Allied Stores International, Inc.*, 388 Mass. 83, 445 N.E.2d 590 (1983). The political activity involved in that case was an individual's attempt to solicit signatures for his nomination as a congressional candidate. In holding that the shopping center must permit the political activity but that it may impose reasonable regulations as to time, place and manner, the court expressly limited its holding to activity related to ballot access because of its fundamental importance to the state's form of government.

We turn now to the cases in which the courts have held that there is no right to conduct political activity in privately owned shopping centers. In *Cologne v. Westfarms Associates*, 192 Conn. 48, 469 A.2d 1201 (1984), the Connecticut Supreme Court rejected a request to require a shopping center to permit the solicitation of signatures on petitions in support of the equal rights amendment. The court determined that the Connecticut Declaration of Rights is intended to protect "individual liberties against infringement by government." 192 Conn. at 61, 469 A.2d at 1208. Because it found that the shopping center does not constitute a property vested with a public character, the court concluded that the center could prohibit political activity on its premises. The New York Court of Appeals

reached similar conclusions in *SHAD Alliance v. Smith Haven Mall*, 66 N.Y.2d 496, 488 N.E.2d 1211, 498 N.Y.S.2d 99 (1985), finding that no state action had been demonstrated by the respondents.

In *Woodland v. Michigan Citizens Lobby*, 423 Mich. 188, 378 N.W.2d 337 (1985), the Michigan Supreme Court determined that its constitutional provisions on free speech are intended to restrict government conduct and are not applicable against private parties. The court also concluded that Michigan's initiative provision reserves a right to the people collectively and does not constitute an individual right. The Wisconsin Supreme Court in *Jacobs v. Major*, 139 Wis.2d 492, 407 N.W.2d 832 (1987), determined that state action is clearly required in order for its free speech provisions to be applicable. In addition to holding that a shopping center is not a public forum, the court ruled that it was both contrary to history as well as illogical to conclude that "a negative restraint on government creates a positive right assertable against all other persons." 139 Wis.2d at 510, 407 N.W.2d at 840.

The only other case which analyzes the issue in detail[1] is *Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut General Life Ins. Co.*, 512 Pa. 23, 515 A.2d 1331 (1986). Because the mall owner in that case uniformly prohibited all political activities and precluded the use of its property as a public forum, the court found that political committee members who were collecting signatures for nominating petitions were not entitled under the Pennsylvania Constitution to a mandatory injunction permitting them to use the mall. The court noted the state's basic constitutional scheme was to establish a government and to define or limit its powers, the latter goal being accomplished by the Declaration of Rights. Although the court concluded that its Declaration of Rights

prohibits the government from interfering with its citizens' inherent rights, it also concluded as follows: "[T]he adjustment of these rights among private parties is not necessarily a matter of constitutional dimensions. If it were, significant governmental intrusion into private individuals' affairs and relations would be likely to routinely occur. This intrusion itself would deprive individuals of important rights of freedom." 512 Pa. at 31, 515 A.2d at 1335. Finally, the court acknowledged that the Pennsylvania Constitution's free speech provisions are more extensive than the First Amendment but held that the regulation of private property through the exercise of the police power is a matter exclusively left to the legislature.

We have reviewed the cases cited by both parties and conclude that the more persuasive are those in which the courts have determined that their states' constitutions do not require private property owners to permit political activities on their premises. We have no quarrel with appellant's assertion that article II, section 6 of our constitution may be more extensive than the First Amendment. Even if that is the case, however, that does not resolve the issue. Regardless of the breadth of § 6, appellant must still establish that it restrains private conduct. This it has been unable to do. The sparse case law that exists on the issue is contrary to appellant's contentions. The supreme court observed in *Earhart v. Frohmiller*, 65 Ariz. 221, 224, 178 P.2d 436, 438 (1947), that our constitution "is not, as is the Constitution of the United States, to be considered a grant of power or enabling act to the Legislature, but rather is a limitation upon the power of that body...." Accord, *Hart v. Bayless Investment & Trading Co.*, 86 Ariz. 379, 346 P.2d 1101 (1959). We have found nothing which indicates that § 6 was intended to restrain private conduct.

---

**1.** In *State v. Felmet*, 302 N.C. 173, 273 S.E.2d 708 (1981), the Supreme Court of North Carolina affirmed a trespass conviction entered against a person who was soliciting signatures in a shopping mall for a petition against the draft. The court rejected the contention that the state's free speech provision confers greater rights than the First Amendment but did not discuss the issue. The Oregon Supreme Court in *Lenrich Associates v. Heyda*, 264 Or. 122, 504 P.2d 112 (1972), held that a shopping center owner was entitled to an injunction against religious activities being conducted on its property based on a conclusion that *Lloyd Corp. v. Tanner*, supra, was controlling on the issue.

## APPLICABILITY OF *MARSH*
### *v. ALABAMA*

Nor do we find any merit to appellant's argument that shopping centers are the functional equivalents of public forums such that the ordinary rules regarding private property owners no longer apply to them. Appellant bases that argument upon a statement in the since-overturned *Logan Valley* case, supra, which in turn was based upon the holding in *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). In *Marsh*, the Supreme Court held that a company-owned town could not criminally punish the distribution of religious literature on its sidewalks. The company owned the town, its streets, sidewalks, business block, residences, sewers, and sewage disposal system. The business owners rented the store buildings, and the United States government rented one in order to operate a post office. As the Court noted, "the town and its shopping district are accessible to and freely used by the public in general and there is nothing to distinguish them from any other town and shopping center except the fact that the title to the property belongs to a private corporation." 326 U.S. at 503, 66 S.Ct. at 277, 90 L.Ed. at 266.

█ The shopping malls in question here are not the functional equivalent of towns. They are simply areas in which a large number of retail businesses is grouped together for convenience and efficiency. Their sole purpose is for shopping, and appellant's argument that they are opened early for joggers and walkers, that large numbers of people are present in them each day, that occasionally non-commercial activities take place in them and that people enjoy air-conditioned comfort in them during Phoenix's scorching summers does not change that basic fact. We agree with the following conclusion of the Wisconsin Supreme Court in *Jacobs v. Major*, supra: "From the way the mall is arranged and operated, the mall is much more like the old-fashioned department store than a municipality. It concerns itself only with one facet of its patrons' lives—how they spend their money." 139 Wis.2d at 523, 407 N.W. 2d at 845.

Nor is there any merit to appellant's contention that the malls cannot prohibit its political activity simply because they are so large and because so many people shop at them. As the Supreme Court noted in *Lloyd*, "Few would argue that a free-standing store, with abutting parking space for customers, assumes significant public attributes merely because the public is invited to shop there. Nor is size alone the controlling factor. The essentially private character of a store and its privately owned abutting property does not change by virtue of being large or clustered with other stores in a modern shopping center." 407 U.S. at 569, 92 S.Ct. at 2229, 33 L.Ed.2d at 143.

We conclude that appellees' shopping centers are not the functional equivalents of public forums.

## CONSTITUTIONAL RECALL RIGHTS

█ Appellant next contends that the malls cannot prohibit its solicitation of signatures because of the importance of the rights of initiative, referendum and recall in the Arizona Constitution. In support of that contention, appellant cites the Massachusetts Supreme Court decision of *Batchelder v. Allied Stores International, Inc.*, supra. What appellant overlooks, however, is the fact that *Batchelder* was decided on the basis of a provision in the Massachusetts Constitution which guarantees free elections and the right to run for public office. Arizona has no comparable provision in its constitution.

We do not dispute the significance of the rights of initiative, referendum and recall in our state government, particularly that of recall. That significance is demonstrated by the fact that the Joint Resolution of Congress which admitted Arizona as a state required the voters to approve our constitutional provisions on recall. They were approved in a general state election held in December 1911. Historical Note to Ariz. Const. art. VIII, § 1.

Nevertheless, we agree with the Michigan Supreme Court's conclusion in *Woodland v. Michigan Citizens Lobby*, supra, that those rights are reserved collectively to the people. They are not expressed in terms of individual rights. Ariz. Const.

art. IV, pt. 1, § 1. Thus, the importance of those rights does not assist appellant's argument.

### ADEQUACY OF NOTICE

Appellant's final complaint is that it did not receive adequate notice of the request for a temporary restraining order. Notice that the order would be sought was given to the statutory agent for appellant. Appellant contends the notice instead should have been given to the attorney who had written a letter to appellees on behalf of appellant because appellees should have known he represented appellant. Because the express purpose of a statutory agent is to receive notice or service of process on behalf of a corporation, A.R.S. § 10–014, we find no merit to the argument.

Nor do we find any merit to appellant's contention that the temporary restraining order was a prior restraint on its freedom of speech rights.

The issuance of the preliminary injunction is affirmed.

LIVERMORE and HATHAWAY, JJ., concur.