FERNER et al., Appellees,

v.

TOLEDO–LUCAS COUNTY CONVENTION AND
VISITORS BUREAU, INC., Appellant.

[Cite as *Ferner v. Toledo–Lucas Cty. Convention &
Visitors Bur., Inc.* (1992), 80 Ohio App.3d 842.]

Court of Appeals of Ohio,
Lucas County.

No. L–91–236.

Decided Aug. 7, 1992.

*Terry J. Lodge,* for appellee.

*Jack G. Fynes* and *David J. Coyle,* for appellant.

SHERCK, Judge.

This is an appeal from a judgment rendered by the Lucas County Court of Common Pleas that permanently enjoined appellant from prohibiting expressive activity within the building known as "Seagate Centre" unless appellant adopted reasonable rules which regulated the time, place and manner of such activity. Because we find that the trial court struck an appropriate balance between the rights of speech and private property rights, we affirm.

On February 4, 1989, appellee Michael S. Ferner [1] and two others entered Seagate Centre for the purpose of obtaining signatures from registered voters on petitions for Ferner's nomination as a candidate for election to the Toledo City Council. Appellee Ferner positioned himself in the lobby of the building, near the Jefferson Avenue entrance. He quietly and politely approached

---

1. Appellees include Ferner and the Ferner for Council Committee. For the sake of clarity, we will refer to appellees in the singular.

visitors, inquiring if they were registered Toledo voters and soliciting their signatures on his nominating petitions. An employee of Seagate noticed the activity; the employee informed Ferner of Seagate's recently enacted policy that prohibited soliciting. Appellee responded that he considered the building to be a public building and that he had a constitutional right to seek signatures in the building. When the employee insisted, appellee Ferner and his associates quietly left the building.

Seagate had displayed prominent posters which stated:

"NO PORTION OF THE RAMPS, ENTRIES, CORRIDORS, PASSAGE-WAYS, HALLS, LOBBIES, STAIRWAYS OR ACCESS TO PUBLIC UTILI-TIES OF THE SEAGATE CENTRE SHALL BE OBSTRUCTED OR USED FOR ANY PURPOSE OTHER THAN INGRESS OF EGRESS FROM THE CENTRE.

"ALL SOLICITATION, LOITERING, PICKETING, DEMONSTRATING, AND DISTRIBUTION OF MATERIALS IS STRICTLY PROHIBITED EX-CEPT FOR DISTRIBUTION OF COMMERCIAL MATERIALS RELATED TO EVENTS IN THE SEAGATE CENTRE WITH THE PRIOR WRITTEN APPROVAL OF THE EXECUTIVE DIRECTOR OF THE SEAGATE CEN-TRE."

Seagate Centre is owned by appellant, Toledo–Lucas County Convention and Visitors Bureau, Inc., which was incorporated as a nonprofit corporation in 1982. The building's facilities are leased to various people, organizations and companies who pay a fee for the opportunity to promote and sell their products to the general public. The University of Toledo uses a portion of the building as its downtown campus. At the time appellee was soliciting signatures, the main auditorium of the building was being used for a boat show.

The building is located on land that is owned by Lucas County, Ohio. Appellant leases the land from the county and manages the building under the terms of a lease between the county and appellant. The building is what is commonly known as a "convention center."

On February 16, 1989, appellee filed his lawsuit seeking an injunction. Appellee alleged that appellant had unlawfully prohibited him from soliciting petition signatures inside Seagate Centre. The trial court originally granted summary judgment in favor of appellee. The case was then appealed to this court. We reversed because genuine issues of material fact were unresolved and summary judgment was therefore inappropriate. See *Ferner v. Toledo–Lucas Cty. Convention & Visitors Bur., Inc.* (Dec. 14, 1990), Lucas App. No. L–89–332, unreported, 1990 WL 205012.

Upon remand, the matter was tried to the court. The trial judge found that the building was private property, but that appellant's property rights, nevertheless, must yield to appellee's right of free expression. This timely appeal followed. Appellant offers the following assignments of error:

"ASSIGNMENT OF ERROR NO. 1:

"The Trial Court Erred In Granting Plaintiffs–Appellees A Permanent Injunction Because Defendant–Appellant Has The Right Under Both The U.S. and Ohio Constitutions To Prohibit Plaintiffs–Appellees From Collecting Petition Signatures Inside Seagate Centre.

"ASSIGNMENT OF ERROR NO. 2:

"The Trial Court Erred In Refusing To Grant Judgment To Defendant–Appellant."

Because of the interrelationship of the arguments in support of these two assignments of error, we will consider them together.

This case presents a broad confrontation between competing constitutional rights: those involving property and those involving free expression. However, we note at the onset of this discussion that the parameters of our review have effectively been set by the trial court when it made its finding that the Seagate Centre is a private building. This court must give great deference to the factual determinations of a trial court. *State v. DePew* (1988), 38 Ohio St.3d 275, 277, 528 N.E.2d 542, 547. Factual findings will not be disturbed if there is substantial evidence upon which the trial court could reach its conclusion. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

Despite appellee's arguments to the contrary, our review of the actual record discloses that there was substantial evidence to support the court's determination that the property was private. Therefore, that finding will stand. As a result, we will not concern ourselves with any potential practices appellant may have regarding the ejection of visitors who carry on activities not pertinent to the tenants' businesses. Our discussion will be strictly limited to the merits of this case.

Initially, we observe that appellee concedes that the First Amendment to the Constitution of the United States does not give one the right to solicit signatures in a private building. Appellee's case will rise or fall on the provisions contained in the Ohio Constitution, as state law may give greater protection to expressive rights than the United States Constitution. *Prune-Yard Shopping Ctr. v. Robins* (1980), 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741.

■ However, the state's prerogative to expand expressive rights at the expense of property rights is not unlimited. Amendment Five to the Constitution of the United States prohibits the taking of private property without just compensation. While the amendment does not prohibit reasonable restrictions on private property rights, it does require the courts to consider (1) the economic impact of the regulation; (2) the regulation's interference with investment-backed expectations; (3) the character of the government action (whether there is a physical invasion); and (4) the nature of the state's interest in the regulation. See *Keystone Bituminous Coal Assn. v. DeBenedictis* (1987), 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472.

■ In our opinion, the injunction preventing appellant from prohibiting expressive activity without providing for reasonable time, place and manner restrictions does not result in a "taking" of property in violation of the Fifth Amendment constraint. The economic impact is speculative at best. Appellant has neither proven that allowing some regulated expressive activity will harm the economic viability of the convention center, nor that investment backers cannot receive a reasonable return if appellee is allowed to solicit signatures in Seagate. Additionally, the government does not propose to physically occupy appellant's land, but only to prevent appellant from wholly prohibiting political speech. Finally, as discussed later in this opinion, the state has a great interest in encouraging robust political debate. Therefore, having determined that the trial court's ruling was not prohibited by the Constitution of the United States, we now focus on whether the court's ruling was in accord with Ohio's Constitution.

■ Under the Constitution of the state of Ohio, neither property rights nor expressive rights are absolute. Section 19, Article I provides that "[p]rivate property shall ever be held inviolate, *but subservient to the public welfare.*" (Emphasis added.) Section 11, Article I of the Ohio Constitution provides: "Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press." This section differs from the United States Constitution in that while both include the prohibition against laws abridging speech, the Ohio Constitution additionally includes an affirmative grant of the right of free speech.

Some courts have concluded that the difference between a prohibition against passing laws and an affirmative grant of the right is significant. *Batchelder v. Allied Stores* (1983), 388 Mass. 83, 445 N.E.2d 590; *Commonwealth v. Tate* (1981), 495 Pa. 158, 432 A.2d 1382. The prohibition against abridging the right is merely a prohibition against interfering with the right,

while the positive grant of the right is a promise to affirmatively protect the right. *Id.*

The California Supreme Court has determined that the Constitution of the state of California gives greater protection to the right of speech and referendum than does the United States Constitution. The California court ruled that the state constitution was broad enough to give a right of speech even on some forms of private property, so long as the degree of infringement on the private property rights does not amount to an unconstitutional "taking" of property. *Robins v. PruneYard Shopping Ctr.* (1979), 23 Cal.3d 899, 153 Cal.Rptr. 854, 592 P.2d 341 (upheld by the United States Supreme Court, see *PruneYard Shopping Ctr. v. Robins, supra*).

In the wake of the *PruneYard* decisions, several state courts have had occasion to interpret their constitutions and address the issues. Two divergent views have emerged. Several states have determined that their state constitutions protect the right of speech even where there is no state action beyond the implicit threat of prosecution for trespass. *Batchelder, supra; Commonwealth v. Tate, supra; Alderwood Assoc. v. Washington Environmental Council* (1981), 96 Wash.2d 230, 635 P.2d 108.

Other states have determined that their state constitutions prohibit only state interference with the right to speak, and that the right of free speech is not so extensive as to allow an infringement of private property rights. *Fiesta Mall Venture v. Mecham Recall Commt.* (App.1988), 159 Ariz. 371, 767 P.2d 719; *Jacobs v. Major* (1987), 139 Wis.2d 492, 407 N.W.2d 832; *Woodland v. Michigan Citizens Lobby* (1985), 423 Mich. 188, 378 N.W.2d 337; *North Carolina v. Felmet* (1981), 302 N.C. 173, 273 S.E.2d 708.

The Ohio Supreme Court has not addressed the issue. However, Ohio's Eighth and Tenth District Courts of Appeals have explicitly declined to construe the Ohio guarantee of free speech more broadly than that required by the United States Constitution. See *Cleveland v. Sundermeier* (1989), 48 Ohio App.3d 204, 549 N.E.2d 561, and *Columbus v. Kasper* (Dec. 23, 1987), Franklin App. No. 87AP–508, unreported, 1987 WL 31290. Neither appellate court discussed the issue in detail.

We think that the better approach is that announced by the Supreme Court of California. Free speech, especially political speech, is the foundation of our system of government. Without robust political debate, each of our other rights so deeply cherished would be without substance.

In subscribing to this more expansive view, we note that the right of free speech has often been treated differently from private property rights. For instance, when a jury determines that speech is not constitutionally protected, the court of appeals will review the evidence *de novo*. *State ex rel. Pizza v.*

*Strope* (1990), 54 Ohio St.3d 41, 45, 560 N.E.2d 765, 768; *Urbana ex rel. Newlin v. Downing* (1989), 43 Ohio St.3d 109, 539 N.E.2d 140. Where only property rights are at stake, we give extraordinary deference to the finder of fact. *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 208–209, 12 O.O.3d 198, 202–203, 389 N.E.2d 1113, 1117–1118. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. Infringement of property rights through land-use regulation requires only a legitimate government interest. *Hudson v. Albrecht* (1984), 9 Ohio St.3d 69, 9 OBR 273, 458 N.E.2d 852. Any regulation restricting speech, on the other hand, is suspect unless the state shows a compelling interest. *Perry Edn. Assn. v. Perry Local Educators' Assn.* (1983), 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794, 804.

█ We conclude that the affirmative grant of the right of free speech contained in Section 11,· Article I of the Ohio Constitution allows for the limited assertion of that right on some forms of private property, so long as the infringement does not result in a "taking" of property. To hold otherwise would render as mere surplusage the words of our state Constitution that say, "[e]very citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right * * *." There would be no purpose for this affirmative grant, as the Ohio constitutional language proscribing infringement of the right is similar to and would be coextensive with the language contained in the First Amendment to the United States Constitution.

█ Having so decided, the critical question then becomes under what circumstances must private property rights give way to another's right to speak. Are appellant's property rights so broad that it may absolutely prohibit expressive activity, or may appellant be compelled to allow some speech, subject to reasonable time, place and manner restrictions? Is appellee's right of free speech so broad that he may enter Seagate Centre against the wishes of appellant and solicit signatures from the public? The answer, as is so often the case where rights compete, requires a balancing of many factors.

The first factor to be considered is the nature and use of the private property. See *Alderwood Assoc. v. Washington Environmental Council, supra.* The scope of property rights depends on the essential nature of the property, and the nature of the property may make the property holder subject to different regulations. For instance, there can no longer be any question that the state has the power to prohibit discrimination in public accommodations based on race, color, religion, national origin or ancestry. *Gegner v. Graham* (1964), 1 Ohio App.2d 442, 30 O.O.2d 442, 205 N.E.2d 69.

On the other hand, the owner of a private residence may invite or exclude social guests for reasons that a business person could not employ. The nature of a private residence is such that the value of the property would be destroyed if the resident was forced to surrender his right of privacy to the public. Commercial property, on the other hand, even though privately owned, may include more of the attributes of public property. *Fairfield Commons Condominium Assn. v. Stasa* (1985), 30 Ohio App.3d 11, 30 OBR 49, 506 N.E.2d 237. The owner of such property may be required to allow the public access for purposes of exercising their right of free speech subject to the reasonable regulations of the property holder.

As property becomes less private in nature, and develops the attributes of publicness, then the expectation of privacy becomes lessened and speech activity poses less of a threat to the value of the property. *Alderwood Assoc. v. Washington Environmental Council, supra.*

The second factor to be considered in the balancing test is the nature of the speech activity. *Id.* Political speech has a special place in our jurisprudence. *United States v. Eichman* (1990), 496 U.S. 310, 110 S.Ct. 2404, 110 L.Ed.2d 287 (concerning prohibitions on burning flags). Indeed, it can be said that healthy political debate is the lifeblood of our system of government. Commercial speech is protected, but it is less revered than political speech. At the other end of the scale is speech that receives no protection: obscenity and words which are likely to evoke an immediate, violent, retaliatory response.

The third factor to be considered is the potential for reasonable regulation of the speech. *Id.* As noted above, the right of speech is not absolute. The time, place and manner of the exercise of the right to speak may be regulated. *Cox v. Louisiana* (1965), 379 U.S. 536, 554–555, 85 S.Ct. 453, 464–465, 13 L.Ed.2d 471, 483–484. In the case of private property in particular, the property owner must be afforded the ability to protect the value of the property. The use of amplification devices, for instance, may be so disruptive that the owner is deprived of the legitimate use of the property. The distribution of literature may result in increased clean-up costs if not regulated. A speaker who is free to wander the entire common areas creates a risk of disrupting the sales message put forth by a paying tenant. A message contained in gaudy signs or even distinctive garb may be harmful to the property owner. In the present case, however, there is nothing in the record before us to indicate that it would be impractical for appellant to develop rules resulting in the reasonable, unobtrusive dissemination of information. Furthermore, there is no reason to believe that appellant would

suffer more than a nominal diminution of its commercial property value by establishing such regulations.

Appellant is entitled to protect its property. However, we hold that it must do so by the use of reasonable restrictions on appellee's expressive rights, not on the complete prohibition of speech unrelated to the business of the convention center. The judgment of the trial court did not extend beyond the bounds of this ruling. The trial court explicitly allowed for reasonable regulations. We find no error in that decision. Accordingly, appellant's assignments of error are not well taken.

On consideration whereof, the court finds that substantial justice has been done the party complaining. The judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal.

*Judgment affirmed.*

GLASSER, P.J., and MELVIN L. RESNICK, J., concur.