LANTZ

v.

**FRANKLIN PARK MALL MANAGEMENT CORPORATION et al.**

Court of Common Pleas of Ohio,
Lucas County.

No. CI97–4586.

Decided March 11, 1999.

8

*Helmick, Prajsner & Hoolahan* and *Mark P. Prajsner*, for plaintiff.

*Manahan, Pietrykoswki, Bamman & Delaney* and *Stephen F. Ahern*, for defendants.

---

FREDERICK H. McDONALD, Judge.

This case is before the court upon a motion for summary judgment filed by defendants Franklin Park Mall Management Corporation ("Franklin Park Mall") and The Rouse Company of Ohio, Inc. ("The Rouse Company"). Upon consideration of the pleadings, written arguments of counsel, and summary judgment evidence, I find that the motion for summary judgment should be granted in part and denied in part.

I

On January 25, 1997, plaintiff Paul C. Lantz went to the Franklin Park Mall with two companions. While there, Lantz was wearing a t-shirt with the name of a rock group printed on the front of the t-shirt and the name of one of their songs, "Everlasting Cocksucker," printed in large letters on the back. He purchased the shirt in the summer of 1996 from Spencer Gifts, a store in the Franklin Park Mall, where the shirt was openly displayed.

In response to a complaint by a woman with two small children, a mall security guard told Lantz that the t-shirt he was wearing violated mall policy and asked Lantz either to put a jacket over the shirt, take the shirt off, or turn the shirt inside out. In addition, Lantz testified that the security guard put his hands on Lantz's shoulder and physically detained him. The security guard denies this. One of Lantz's companions also stated in her deposition that the security guard did not physically touch or restrain Lantz.

Lantz brought three claims against the defendants: (1) that the defendants' actions violated Lantz's right to free speech and expression guaranteed by Section 11, Article I of the Ohio Constitution and the First Amendment to the United States Constitution, (2) that Lantz was falsely imprisoned by being detained in the mall against his will, and (3) that the defendants' conduct was such that he is entitled to punitive damages. The defendants have filed a motion for summary judgment, which is opposed by plaintiff.

## II

The general rules governing motions for summary judgment filed pursuant to Civ.R. 56 are well established. In *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47, the Supreme Court of Ohio stated the requirements that must be met before a motion for summary judgment can be granted:

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

"The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment."

A party who claims to be entitled to summary judgment on the ground that a nonmovant cannot prove its case bears the initial burden of (1) specifically identifying the basis of its motion and (2) identifying those portions of the record that demonstrate the absence of a genuine issue of material fact regarding an essential element of the nonmovant's case. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274; see, also, *Dresher,* 75 Ohio St.3d at 299, 662 N.E.2d at 277–278 (Pfeifer, J., concurring in judgment only). The movant satisfies this burden by calling attention to some competent summary judgment evidence, of the type listed in Civ.R. 56(C), affirmatively demonstrating that the nonmovant has no evidence to support his or her claims. *Id.* Once the movant has satisfied this initial burden, the burden shifts to the nonmovant to set forth specific facts, in the manner prescribed by Civ.R. 56(E), indicating that a genuine issue of material fact exists for trial. *Dresher,* 75 Ohio St.3d at 293, 662 N.E.2d at 273–274. Accord *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 114–115, 526 N.E.2d 798, 800–802.

The Sixth District Court of Appeals has consistently held that summary judgment should be granted with caution in order to protect the nonmoving party's right to trial. As stated by the court in *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 14–15, 13 OBR 8, 16, 467 N.E.2d 1378, 1386:

"We recognize that summary judgment, pursuant to Civ.R. 56, is a salutary procedure in the administration of justice. It is also, however, a procedure which should be used cautiously and with the utmost care so that a litigant's right to a trial, wherein the evidentiary portion of the litigant's case is presented and developed, is not usurped in the presence of conflicting facts and inferences. * * * It is settled law that '[t]he inferences to be drawn from the underlying

facts contained in the affidavits and other exhibits must be viewed in the light most favorable to· the party opposing the motion, * * *' which party in the instant case is appellant. * * * It is imperative to remember that the purpose of summary judgment is not to try issuès of fact, but rather to determine whether triable issues of fact exist." (Citations omitted.)

## III

### A. *Free Speech Claims*

■ The first issue is whether defendants are entitled to summary judgment as to Lantz's free speech claim under the First Amendment to the United States Constitution. The First Amendment to the United States Constitution provides in relevant part that "Congress shall make no law * * * abridging the freedom of speech * * *." The First Amendment was made applicable to the states by the . Fourteenth Amendment Due Process Clause, which states, "[N]or shall any State deprive any citizen of life, liberty, or property, without due process of law * * *." *Stromberg v. California* (1931), 283 U.S. 359, 368, 51 S.Ct. 532, 535, 75 L.Ed. 1117, 1122–1123.

Since the *Civil Rights Cases* (1883), 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835, the Fourteenth Amendment has been understood as affording protection only against deprivation of civil rights by state action. In reiterating this position, the United States Supreme Court stated in *Shelley v. Kraemer* (1948), 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161, 1180, that the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." See, also, *Jackson v. Metro. Edison Co.* (1974), 419 U.S. 345, 349, 95 S.Ct. 449, 452–453, 42 L.Ed.2d 477, 482–483.

This requirement of state action has been applied in cases where the Supreme Court held that there were no First Amendment rights enforceable against the owners of shopping centers. *Hudgens v. Natl. Labor Relations Bd.* (1976), 424 U.S. 507, 513 and 519, 96 S.Ct. 1029, 1033 and 1036, 47 L.Ed.2d 196, 202–203 and 206–207; *Lloyd Corp. v. Tanner* (1972), 407 U.S. 551, 567–570, 92 S.Ct. 2219, 2228–2230, 33 L.Ed.2d 131, 141–144. The *Lloyd* court rejected the argument that a privately owned retail shopping center is the "functional equivalent" of a business district. *Lloyd,* 407 U.S. at 568–569, 92 S.Ct. at 2228–2229, 33 L.Ed.2d at 142–143.

It is undisputed that the security guard in this case was acting entirely on behalf of the mall and not on behalf of a governmental authority. It follows that in the absence of any evidence of state action, plaintiff's claim based on a violation of the United States Constitution must be dismissed.

The next issue is whether the free speech provision of the Ohio Constitution also requires a showing of state action. Section 11, Article I of the Ohio Constitution provides as follows:

"Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press."

■ States may adopt greater protections for free speech on private property than the First Amendment allows if the broader protections do not conflict with the private property owner's constitutional rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution. *PruneYard Shopping Ctr. v. Robins* (1980), 447 U.S. 74, 81, 100 S.Ct. 2035, 2040–2041, 64 L.Ed.2d 741, 751–752.

■ Lantz argues that the court should follow *Ferner v. Toledo–Lucas Cty. Convention & Visitors Bur., Inc.* (1992), 80 Ohio App.3d 842, 610 N.E.2d 1158, which holds that the Ohio Constitution guarantees broader speech protections than the United States Constitution. However, the *Ferner* reasoning was rejected by the Ohio Supreme Court in the subsequent case of *Eastwood Mall, Inc. v. Slanco* (1994), 68 Ohio St.3d 221, 626 N.E.2d 59, certiorari denied (1994), 513 U.S. 933, 115 S.Ct. 329, 130 L.Ed.2d 288.[1] In the *Eastwood Mall* case, the court approved an injunction that prohibited picketing and handbilling at a mall and at a shopping center. The court specifically held that the free speech provisions of the Ohio Constitution provide no broader protections than those given in the United States Constitution, *id.* at 222, 626 N.E.2d at 60–61, and that Section 11 prohibits only state action that restricts free speech. *Id.* at 223, 626 N.E.2d at 61–62. It follows that the rights of free speech guaranteed by the Ohio Constitution, like those guaranteed by the United States Constitution, are not enforceable against the owners of shopping malls. The court noted that its ruling was consistent with the majority rule in other states that also require state action and cited numerous cases from other jurisdictions. *Id.* at 223, 626 N.E.2d at 61–62. A review of the cases cited in the footnote and their holdings makes it clear that the Ohio Supreme Court intended that its holding in *Eastwood Mall* apply in cases such as the instant case.[2] The courts in those cases expressly repudiated

---

1. But, cf., the dissent of Justice Wright, where he distinguishes *Ferner* from *Eastwood Mall* on the grounds that *Ferner* involved the solicitation of signatures on nominating petitions at a convention center. *Eastwood Mall*, 68 Ohio St.3d at 228, 626 N.E.2d at 64–65.

2. *Charleston Joint Venture v. McPherson* (1992), 308 S.C. 145, 417 S.E.2d 544, 548 (rejected the public-forum argument, holding that a shopping mall does not open itself up to the public without reservation); *Citizens for Ethical Govt., Inc. v. Gwinnett Place Assoc., L.P.* (1990), 260 Ga. 245, 392 S.E.2d 8, 9 (convenience of getting signatures at a shopping mall for a recall

plaintiff's argument that shopping malls function not just as a center for sales, but as a "public place," a "Main Street of America."

In the present case, there is no state action involved. It is undisputed that Franklin Park Mall is private property and that the security guard involved in this dispute was not acting as a governmental employee, but as a private employee of Franklin Park Mall. Lantz has failed to establish the threshold requirement of state action. Consequently, this court is required by clear precedent to dismiss his free speech claim brought under Section 11, Article I of the Ohio Constitution.[3]

## B. *False Imprisonment Claim*

False imprisonment has been defined as " 'to confine one intentionally without lawful privilege and against his consent within a limited area for any appreciable time, however short.' " *Feliciano v. Kreiger* (1977), 50 Ohio St.2d 69, 71, 4 O.O.3d 158, 159, 362 N.E.2d 646, 647, quoting 1 Harper & James, The Law of Torts (1956) 226, Section 3.7.

█ Lantz says that he was physically detained; the security guard disputes this. Lantz's companion in her deposition said that there was no physical contact

---

does not create a constitutional right); *Southcenter Joint Venture v. Natl. Democratic Policy Commt.* (1989), 113 Wash.2d 413, 780 P.2d 1282, 1286 (notwithstanding lack of the words "state action" in free speech provision, Constitution is founded upon a need "to govern the relationship between the people and their government, not to control the rights of the people vis-a-vis each other"); *Jacobs v. Major* (1987), 139 Wis.2d 492, 407 N.W.2d 832, 845 (shopping mall is not like a town or public center because a mall "concerns itself only with one facet of its patrons' lives—how they spend their money"); *Woodland v. Michigan Citizens Lobby* (1985), 423 Mich. 188, 378 N.W.2d 337, 344–346, 357 (requirement of state action is a threshold issue in a free speech claim; court should not perform a balancing test of the competing private interests, that being the job of the legislature); *SHAD Alliance v. Smith Haven Mall* (1985), 66 N.Y.2d 496, 498 N.Y.S.2d 99, 488 N.E.2d 1211, 1215 (state action requirement is "deeply rooted in constitutional tradition" and is "at the foundation of the very nature of a constitutional democracy"); *Cologne v. Westfarms Assoc.* (1984), 192 Conn. 48, 469 A.2d 1201, 1208–1209 (notwithstanding language in state's free speech provision affirmatively granting free speech, court not persuaded that the "variations in phraseology are sufficient to indicate an intention to allow those rights to be exercised upon every property"); *Fiesta Mall Venture v. Mecham Recall Commt.* (App.1988), 159 Ariz. 371, 767 P.2d 719, 724, review denied (Ariz.1989), Ariz. LEXIS 44 (shopping malls are not functional equivalents of towns; the sole purpose of a mall is shopping so that occasional noncommercial activities held at the mall do not change that basic fact); *W. Pennsylvania Socialist Workers 1982 Campaign v. Connecticut Gen. Life Ins. Co.* (1984), 335 Pa.Super. 493, 485 A.2d 1, 8 (a shopping mall is not a public forum). See, generally, Annotation, Validity, Under State Constitutions, of Private Shopping Center's Prohibition or Regulation of Political, Social, or Religious Expression or Activity (1997), 52 A.L.R.5th 195, 1998 WL 1802.

3. In view of this holding, it is unnecessary to consider whether the writing on plaintiff's t-shirt was obscene and thus outside the protection of the federal and state constitutional free speech provisions.

between Lantz and the security guard. Thus, a genuine issue of material fact exists as to whether Lantz was falsely imprisoned, and summary judgment must be denied as to the false imprisonment claim.[4]

### C. *Vicarious Liability Issue*

The plaintiff alleges in his complaint that The Rouse Company is vicariously liable based on the doctrine of *respondeat superior* and agency principles. It is well settled that for the doctrine of *respondeat superior* to apply, an employee must have committed a tort within the scope of his employment. *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 58, 565 N.E.2d 584, 587. Usually intentional torts are outside the scope of employment. *Finley v. Schuett* (1982), 8 Ohio App.3d 38, 39, 8 OBR 41, 41–43, 455 N.E.2d 1324, 1325–1326. An intentional tort is outside the scope of employment where the acts of the employee in no way facilitate or promote the employer's business. *Byrd, supra.* However, "[t]he act of an agent is the act of the principal within the course of the employment when the act can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of the service to be rendered, or a natural, direct, and logical result of it." *Tarlecka v. Morgan* (1932), 125 Ohio St. 319, 324, 181 N.E. 450, 452. Generally, whether an act was committed within the scope of employment is a question of fact for the jury. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 330, 587 N.E.2d 825, 829. Based on agency principles, an employer can be vicariously liable for injury to a third party if the employer expressly authorizes or otherwise ratifies the employee's tortious actions. 39 Ohio Jurisprudence 3d (1997) 470, Employment Relations, Section 381. See, also, *Fulwiler v. Schneider* (1995), 104 Ohio App.3d 398, 406, 662 N.E.2d 82, 86–87, citing *State ex rel. Riley Constr. Co. v. E. Liverpool City School Dist. Bd. of Edn.* (1967), 10 Ohio St.2d 25, 39 O.O.2d 15, 225 N.E.2d 246. Based on the present state of the record, a question of material fact exists as to whether the security guard's acts were within the scope of his employment.

The Rouse Company argues that it cannot be held vicariously liable for the acts of a Franklin Park Mall employee because it does not own, operate, or manage Franklin Park Mall. However, Kevin Lent, the vice president and general manager of Franklin Park Mall, testified in his deposition that The Rouse Company is his employer and that he gets his paychecks from The Rouse Company. Consequently, a genuine issue of fact exists as to how much control

---

4. It is undisputed that plaintiff purchased the t-shirt from Spencer Gifts located at the Franklin Park Mall and that the t-shirt was openly displayed at Spencer Gifts at the time of its purchase in the summer of 1996. The apparently arbitrary action by the mall in permitting the display and sale of the t-shirt but prohibiting the wearing of the t-shirt in the mall is not relevant on plaintiff's free speech claims but may be relevant on his claim for punitive damages for false imprisonment.

The Rouse Company has over Franklin Park Mall and its employees. It follows that The Rouse Company's motion for summary judgment must be denied on the vicarious liability issue.

## JOURNAL ENTRY

The court finds that there are no genuine issues of material fact and that defendants Franklin Park Mall Management Corporation and The Rouse Company of Ohio, Inc, are entitled to judgment as a matter of law as to plaintiff Paul C. Lantz's free speech claims, and it is ordered that the defendants have summary judgment against plaintiff as to the free speech claims and that those claims are dismissed with prejudice at plaintiff's costs.

The court further finds that there are genuine issues of material fact as to the false imprisonment claim and the related claim for punitive damages, and it is ordered that defendants' motion for summary judgment is denied as to those claims.

Pursuant to Civ.R. 54(B), the court finds that there is no just reason for delay.

*Judgment accordingly.*